# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| B&P Littleford, LLC, | Case No. _____ |
| Plaintiff, | Hon. _____ |
| | Mag. Judge _____ |
| vs. | |
| Prescott Machine, LLC, and Ray Miller, | |
| Defendants. | |

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff B&P Littleford, LLC ("B&P"), by and through its undersigned counsel, sets forth the following allegations against the Defendants, Prescott Machine, LLC, also doing business as "Prescott Energetics Systems, LLC" ("Prescott") and Ray Miller ("Miller") (collectively, "Defendants"), as follows:

## INTRODUCTION

1.  This is an action for copyright infringement "copyright management information" (hereafter "CMI") violations pursuant to the Digital Millennium Copyright Act ("DMCA"), and reverse passing off under the Lanham Act, 15 U.S.C. § 1125(a).

2.  Miller, a former B&P employee, formed Prescott, a process manufacturing company in direct competition with B&P, after being terminated by B&P.

3.      Based on information and belief, and unbeknownst to B&P, Miller has taken

possession of digital and/or physical copies of B&P's technical drawings and

schematics without consent and has subsequently converted these highly-

detailed engineering drawings into computer aided design ("CAD") files that

he could manipulate to remove all evidence, namely CMI, that the drawings

belonged to B&P. Miller has sought to profit from his unlawful conduct by

using the unauthorized copies of B&P's works for the benefit of himself and

Prescott to compete with B&P for projects.

4.      Miller and/or Prescott employees also removed labeling depicting B&P's

mark and logo from a vertical mixer designed and manufactured by B&P's

predecessor, and then replaced it with signage reflecting its own tradename

and mark to trade off B&P's goodwill and reputation.

5.      By this action, B&P seeks a preliminary and permanent injunction against

Defendants' ongoing infringement of its rights, and damages, both actual and

statutory, for Defendants' violations of B&P's rights.

## THE PARTIES

6.      Incorporated in 1911, Plaintiff originally operated under the name "Baker

Perkins, Inc." until 1987.

7.      From 1987 until 1995, after merging with APV Chemical Machinery, Inc.,

Baker Perkins, Inc. conducted business as APV. Through the merger, APV

purchased, succeeded to, and retained all of the rights and liabilities of Baker Perkins, Inc., including all of Baker Perkins, Inc.'s assets, contractual obligations, and rights.  In particular, Baker Perkins, Inc. assigned all rights, title, interest, and goodwill in and to the "Baker Perkins" mark, including all common law rights to APV.

8.    In 1995, APV sold the assets of chemical machinery business to B&P Process Equipment and Systems, L.L.C., a newly formed Delaware limited liability company with a principal place of business in Michigan.

9.    As part of the 1995 purchase of APV's chemical machinery business, B&P Process Equipment and Systems, L.L.C., purchased, succeeded to, and retained certain of APV's assets, contractual obligations, and rights, including the assets at interest in this lawsuit.

10.   On January 1, 2017, B&P Process Equipment and Systems, L.L.C. reincorporated and changed its name to B&P Littleford, LLC (referred to herein as "B&P"). B&P succeeded to and retained all the assets, rights, and liabilities of B&P Process Equipment and Systems, L.L.C.

11.   B&P is a limited liability company organized and existing pursuant to the laws of the State of Delaware. B&P's principal place of business is located at 1000 Hess Avenue, Saginaw, Michigan 48601.

12.     Defendant Prescott is a limited liability company organized and existing pursuant to the laws of the State of Michigan. Prescott's principal place of business is located at 4480 Marlea, Saginaw, Michigan 48601, and its registered office is located at 8090 Mandy Lane, Frankenmuth, Michigan 48734.

13.     Prescott Energetics Systems, LLC is a d/b/a existing under the control of, and for the exclusive benefit of, Prescott Machine, LLC and Miller.

14.     Defendant Miller is a resident of Michigan.  Since April 2008, Miller has been the President, CEO, and owner of Prescott.

## JURISDICTION AND VENUE

15.     This is a civil action seeking damages and injunctive relief for federal claims arising under the Copyright Act, 17 U.S.C. §§ 101 et seq., the DMCA, 17 U.S.C. §§ 1201 et seq., and the Lanham Act 15 U.S.C. § 1051 et seq.  This Court has subject matter jurisdiction over these causes of action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1400 (copyright).

16.     This Court has personal jurisdiction over Prescott because Prescott is organized and operates pursuant to the laws of the State of Michigan, because Prescott has a principal place of business in the State of Michigan, and because this action arises from Prescott's copyright infringement and DMCA violations taking place within and causing injury within this State and District.

17. This Court has personal jurisdiction over Miller because Miller is a resident of this State and District and because this action arises from Miller's copyright infringement and DMCA violations taking place within and causing injury within this State and District.

18. Pursuant to 28 U.S.C. § 1391, venue is proper in this District because both Prescott and Miller reside in this District and because a substantial part of the events giving rise to this action occurred within this State and District.

## FACTUAL ALLEGATIONS

### B&P's Business and Protected Works

19. Plaintiff adopts and incorporates paragraphs 1 through 18 above by reference as fully as if set forth herein verbatim.

20. B&P designs and manufactures a wide variety of high quality, highly engineered equipment for large- and small-scale manufacturing applications such as mixers, dryers, extruders, compounders, kneaders, reaction vessels, Podbielniak Centrifuges, and centrifugal separation equipment.

21. In order to preserve institutional knowledge and assist vendors and customers in visualizing and understanding the designs of these highly engineered devices, employees, in the normal course of and within the scope of their employment, created detailed drawings comprising engineering schematics depicting, amongst other information, the layout, scale, and measurements of

B&P's devices. The drawings include various notations regarding best practices related to the manufacture of such machinery.

22. The drawings are the product of many hundreds of thousands of dollars spent on research and development and thousands of engineering hours, reflecting the knowledge and experience of B&P from decades of field experience in the industry.

23. B&P limited disclosure of the B&P drawings and the purposes for which the drawings could be used.

24. The independent creation of drawings similar to B&P's would take substantial monetary and time investments, and certainly could not be replicated by Miller or Prescott.

25. The drawings are, by their nature, the subject of copyright protection under the laws of the United States. B&P has further protected the drawings by filing for and receiving copyright registrations with the United States Copyright Office. Filed herewith as Exhibit A, and incorporated herein by reference, is a list of copyright registrations for the four known (but by no means all) works (hereafter the "B&P drawings") being infringed by Defendants. Filed herewith as Exhibits B-I are true and accurate copies of B&P's drawings and their respective copyright registrations, which are being infringed by Defendants.

26.   CMI, as that term is used in the DMCA, is affixed to each of the B&P drawings so that the public can easily identify the drawings as belonging to B&P. The CMI for each B&P drawing includes such identifying information as the name of the author (i.e. the drafter), the date of authorship, the copyright owner, initials indicating additional authors (i.e. authors of revisions) and date(s) of revisions.

27.   Figure 1 is a true and accurate copy of B&P drawing 113-945 (Exhibit B), which depicts a planetary support housing, i.e., an exterior case for the specialized planetary gearbox, for a vertical planetary batch mixer as shown below:



**FIG. 1 – B&P Drawing 113-945**

28.   A vertical planetary batch mixer is a device for mixing rocket fuel or other energetics to ensure the mixture is uniform and homogenous. Because of the corrosive and flammable nature of rocket fuel and energetics, safety design is critical.

29.   B&P's planetary batch mixers have been sold worldwide to hundreds of customers for use across a variety of industries.

30.   A true and accurate copyright registration (registration number VAu001397828) designating B&P as the exclusive rights holder, dated June 12, 2020, for this B&P drawing 113-945 is attached at Exhibit C.

31.   Figure 1A is a close-up depiction of the title block of B&P drawing 113-945, (Exhibit B).



**FIG. 1A – B&P Drawing 113-945**

32.   A title block is a text box typically located at the bottom or lower right-hand corner of a drawing that provides identifying information about the drawing such as the drawing title, drawing number, signatures and approval dates representing when and by whom the drawing was drafted and verified for final approval.

33.   The title blocks of B&P's drawings include CMI.

34.     Figure 1A indicates that B&P drawing 113-945 was drawn by "Conzelmann"

        on August 18, 1962 and that revisions were made on at least: January 10,

        1964; August 9, 1967; August 16, 1983; and June 21, 1985. The CMI

        identifies Baker Perkins, Inc. as the owner of all rights in B&P drawing 113-

        945.

35.     B&P is the owner of all rights in B&P drawing 113-945.

36.     Additional notations indicate that B&P drawing 113-945 was associated with

        a project "size 12 PUM."

37.     Figure 2 is a true and accurate copy of B&P drawing 133-945 (Exhibit D),

        which depicts a dished head, i.e., a rounded support structure of the planetary

        support, for a vertical planetary batch mixer as shown below:



**FIG. 2 – B&P Drawing 133-945**

38.    A true and accurate copyright registration (registration number VAu1397825) designating B&P as the exclusive rights holder, dated June 12, 2020, for B&P drawing 133-945 is attached at Exhibit E.

39.    Figure 2A is a close-up depiction of the title block of B&P drawing 133-945. Exhibit D.



**FIG. 2A – Title Block of B&P Drawing 133-945**

40.    Figure 2A indicates that B&P drawing 133-945 was drawn by "Conzelmann" on August 20, 1962 and that revisions were made on at least: November 6, 1974; and June 25, 1985. The CMI identifies Baker Perkins, Inc. as the owner of all rights in B&P drawing 133-945.

41.    B&P is the owner of all rights in B&P drawing 133-945.

42.    Additional notations indicate that B&P drawing 133-945 was associated with a project "code name 'millet' (purchase unmachined)."

43.    Figure 3 is a true and accurate copy of B&P drawing 132-945 (Exhibit F), which depicts a bearing housing, which allows the entire gearbox to rotate within the machine and keep the blades from interfering with the bowl, for a vertical planetary batch mixer.



**FIG. 3 – B&P Drawing 132-945**

44. A true and accurate copyright registration (registration number VAu1397835) designating B&P as the exclusive rights holder, dated June 12, 2020, for B&P drawing 132-945 is attached at Exhibit G.

45. The following is a close-up depiction of the title block of B&P drawing 132-945. Exhibit F.



**FIG. 3A – Title Block of B&P Drawing 132-945**

46.     Figure 3A indicates that B&P drawing 132-945 was drawn by "Conzelmann" on August 20, 1962 and that revisions were made on at least: June 25, 1985; and November 2, 1984. The CMI identifies Baker Perkins, Inc. as the owner of all rights in B&P drawing 132-945.

47.     B&P is the owner of all rights in B&P drawing 132-945.

48.     Additional notations indicate that B&P drawing 132-945 was associated with a project "size 12 PUM (special)."

49.     Figure 4 is a true and accurate copy of B&P drawing 134-945 (Exhibit H), which depicts a support housing ring, i.e. a structural component that makes up the planetary support, for a vertical planetary batch mixer as shown below:



**FIG. 4 – B&P Drawing 134-945**

50.    A  true  and  accurate  copyright  registration  (registration  number VAu001397833) designating B&P as the exclusive rights holder, dated June 12, 2020, for B&P drawing 134-945 is attached at Exhibit I.

51.    The  following  is  a  screenshot  of  the  title  block  of  B&P  drawing  134-945. Exhibit H.



**FIG. 4A – Title Block of B&P Drawing 134-945**

52.    Figure 4A indicates that B&P drawing 134-945 was drawn by "Conzelmann" on August 20, 1962 and that revisions were made on at least: June 21, 1985; and November 2, 1984. The CMI identifies Baker Perkins, Inc. as the owner of all rights of B&P drawing 134-945.

53.    B&P is the owner of all rights in B&P drawing 134-945.

54.    Additional notations indicate that B&P drawing 134-945 was associated with a project "size 12 PUM (special)."

55.    B&P exercises control over the display, reproduction, distribution, and use of the B&P drawings in order to maximize the value of the works, and to protect the valuable relationships between B&P and its customers and also B&P and its vendors.

56.   Although the B&P drawings were originally created as drawings drafted by hand and physical copies, once it became common to communicate with customers and vendors through email, all of the B&P drawings were maintained as digital files.

57.   All copies of the B&P drawings, whether provided physically or transmitted digitally to third parties such as customers and vendors, include a title block and thus possess CMI when they are distributed by B&P personnel.

### B&P Labeled The Vertical Mixer It Designed and Manufactured

58.   B&P, and its predecessors, have used the tradename "Baker Perkins" continuously in interstate commerce since at least 1935, establishing valuable common law rights in the tradename.  Additionally, on December 30, 2008, the USPTO issued U.S. Trademark Reg. No. 3,555,376 to B&P for the mark "Baker Perkins."  Exhibit J.

59.   B&P, and its predecessors, have also used the mark depicted below (hereafter the "B&P Globe Logo") continuously in interstate commerce since at least 1962, establishing valuable common law rights in the B&P Globe Logo mark.



B&P Globe Logo

60.  The quality and success in the marketplace of Baker Perkins, Inc.'s and later B&P's goods and services helped establish the "Baker Perkins" tradename and B&P Globe Logo as successful and recognizable brands throughout the chemical machinery industry and among purchasers of B&P's goods and services.

61.  B&P, and its predecessors, have labeled the machinery it designed and produced with the "Baker Perkins" mark and the B&P Globe Logo for decades.

62.  Labeling of B&P's machinery serves a number of functions.  It assists owners and/or operators of the machinery in identifying the source and other pertinent information about the machinery and acts as advertising to promote the goodwill that Baker Perkins, Inc., and now B&P, garnered through the superior design and quality of its machinery.

63. In June 1976, B&P's predecessor, Baker Perkins, Inc., sold a 14 PNM Vertical Mixer (the "Vertical Mixer") to Thiokol Corporation, the build of which was completed in or around October 1977.  The Vertical Mixer was shipped to Thiokol Corporation's Longhorn Army Ammunition Plant in Marshall, Texas.

64. The Vertical Mixer sold to Thiokol Corporation originally bore a physical "Baker Perkins" label and the B&P Globe Logo in at least three locations on the mixer.

65. The Vertical Mixer sold to Thiokol Corporation was labeled with the "Baker Perkins" mark and the B&P Globe Logo on a "logo plate," which acts as a source identifier for the machinery and advertising.  A representative B&P drawing depicting the design layout of a logo plate such as the one that was installed on B&P's Vertical Mixer is depicted below.  Exhibit K.



**FIG. 5 – B&P Drawing 791-317**

16

66. The Vertical Mixer was also labeled with the "Baker Perkins" mark and the B&P Globe Logo on a "machine data plate," which provides information regarding the manufacture and purchase of the machinery. A representative B&P drawing depicting the design and layout of the machine data plate such as the one that was installed on B&P's Vertical Mixer is depicted below. Exhibit L.



**FIG. 6 – B&P Drawing 713-317**

67. Finally, the Vertical Mixer bore the "Baker Perkins" mark and B&P Globe Logo on a "patent plate," which marks the machine with the U.S. patents associated with the machine. A representative B&P drawing depicting the

design and layout of the patent plate such as the one that was installed on B&P's Vertical Mixer is depicted below. Exhibit M.



**FIG. 7 – B&P Drawing 731-317**

68. On information and belief, sometime between 1991 and 1998, the U.S. Army acquired the Vertical Mixer from Thiokol Corporation and moved it to the McAlester Army Ammunition Plant in McAlester, Oklahoma.

69. On information and belief, neither Thiokol Corporation nor the U.S. Army removed any of the labeling depicting the "Baker Perkins" mark or the B&P Globe Logo.

## **Miller's Prior Relationship with B&P**

70.   Miller was previously employed by B&P and its predecessors in various capacities.

71.   Miller's relationship with B&P started in 1991 when he worked for APV as a national sales manager. By 1995, Miller had become Vice President and General Manager of the APV Chemical Machinery Division, which was a wholly-owned subsidiary of APV.

72.   When B&P Process Equipment and Services, L.L.C. acquired APV's chemical division in 1995, Miller became B&P Process Equipment and Services, L.L.C.'s shareholder, board member, and President and Chief Executive Officer ("CEO").

73.    In 2008, B&P terminated Miller's employment.

74.   B&P filed suit against the Defendants in this District on May 7, 2018, alleging misappropriation of trade secrets related to a vertical mixer subject to a request for proposal by the U.S. Navy. The Court found in favor of Defendants on technical grounds related to the statute of limitations at the summary judgment stage. That holding is currently pending appeal before the Sixth Circuit. The products at issue in that case are not at issue in the instant action.

## Miller Exploits His Prior Relationship with B&P and Obtains Copies of B&P's Drawings

75.   In or around April 2008, after Miller was terminated but was still receiving a paycheck from B&P, Miller formed his own company called Prescott Machine, LLC.   Initially, Prescott sold manufacturing equipment for other companies.   At some point after Prescott's formation, Prescott began servicing and repairing B&P equipment for its owners.

76.   Since its founding, Miller has served as the CEO and President of Prescott.

77.   On information and belief, Miller is the sole full-time employee of Prescott.

78.   Prescott now competes directly with B&P in the field of manufacturing equipment for the process industries and aftermarket service of such manufacturing equipment.

79.   Due to his prior employment with B&P and its predecessors, Miller has gained access to B&P's drawings from various sources in both their physical (paper and microfilm) and digital file formats, including, but not limited to, the registered B&P drawings at Exhibit A.

80.   On information and belief, before his termination, Miller used his access to B&P's files to take hardcopies of at least some of B&P's technical drawings.

81.   On information and belief, before his termination, Miller used his access to B&P's files to take electronic copies of at least some of B&P's technical drawings.

82. Miller has admitted to obtaining B&P documents from a third party who Miller alleges discovered a stash of copies of B&P's documents. Rather than return the documents to B&P, as someone in his position should have done, Miller chose to keep B&P's files for his own benefit and for his competing business.

83. On information and belief, Miller also persuaded a third party with access to or in possession of electronic copies of B&P's technical drawings to provide him a thumb drive containing copies of B&P documents, including at least some of B&P's technical drawings.

84. Regardless of how Miller obtained B&P's documents, B&P did not authorize Miller to take, much less use, these materials after his termination. Indeed, Miller was contractually prohibited from doing so by his termination agreements. Despite his obligations and duties to the company, Miller intentionally took possession of these materials for his own personal gain so that he could create a competing business and exploit the decades' worth of knowledge and experience that went into creating B&P's drawings to secure business Miller and his recently established company could not otherwise win.

85. Miller and Prescott's theft of B&P's intellectual property has been so bold that, based on information and belief, Defendants are physically branding

mixers as their own, despite having been designed and built based on B&P's copyrighted works.

## B&P Discovers Miller and Prescott's Copies and Derivative Works

86.   On April 8, 2020, a B&P vendor, Cambron Engineering, Inc. ("Cambron"), received a series of drawings from a third party in connection with a request for parts for a vertical planetary batch mixer on behalf of a job for Prescott. A copy of the email forwarded to B&P, including its attachments, has been attached as Exhibit N.

87.   Cambron forwarded the email attaching the drawings to B&P because of the goodwill and long-standing relationship B&P has developed with Cambron, and because Cambron recognized, without prompting, that the drawings originating from Prescott were copies of B&P's drawings.

88.   B&P immediately recognized that the drawings in the April 2020 email were CAD copies of its own original hand-drawn drawings for the same parts of its very own mixer, but with title blocks identifying Prescott as owner of the drawings. Cambron's email to B&P was the first notification to B&P that Defendants were not only infringing B&P's copyrights, but also that Defendants had removed B&P's CMI from these four works and fraudulently replaced it with their own false CMI.

89.   A comparison of the Prescott works to the B&P drawings, illustrated below, shows the Prescott works are clear derivatives, if not outright digital reproductions, of the B&P drawings.

90.   The evidence of infringement by Defendants is particularly notable given that in several instances, even the positioning of text relative to the drawings has been mimicked, as has B&P's use of punctuation.

91.   It is implausible that Defendants would or could have independently authored these works, which bear such striking similarities to B&P's copyrighted works.

**Comparison of B&P's Drawings with Prescott's Copies and Derivative Works**

92.   Set forth below are side-by-side comparisons of B&P's original, protected drawings against the copies made by Defendants and distributed to a third party in or around April 2020.

**Prescott Drawing 411.3017**

93.   The following is a side-by-side comparison of B&P drawing 113-945 (Figure 1) depicting a planetary support housing for a vertical planetary batch mixer with the copy made by Defendants (Figure 8), labeled 411.3017 (hereafter, "Prescott drawing 411.3017"). (Exhibits B & N at 3-4). The images have been annotated to highlight similarities between the two drawings.

23

| B&P Drawing 113-945 – FIG. 1 | Prescott Drawing 411.3017 – FIG. 8 |
|---|---|



94.     As is evident by comparing the original B&P work at Figure 1 to the Prescott copy at Figure 8, the Prescott drawing is a copy and/or derivative work, as a CAD file, of the B&P image. The layout, scale, measurements, and notations are copies of the same text in Figure 1, with the following exceptions:

Defendants (a) converted the handwritten notations to digital text, (b) expanded B&P's one-page drawing to a two-page format, and (c) intentionally removed B&P's CMI and replaced it with false information suggesting Prescott owns the work.

95. Table 1, below, is a side-by-side comparison of close-up sections of Figures 1 and 8. The images have been annotated to highlight similarities between B&P drawing 113-945 and Defendants' copy and/or derivative work.

| Table 1: Comparison of B&P Drawing 113-945 with Prescott Drawing 411.3017 | |
|---|---|
| **B&P Drawing 113-945 – FIG. 1B** | **Prescott Drawing 411.3017 – FIG. 8B** |
|  |  |
| **B&P Drawing 113-945 – FIG. 1C** | **Prescott Drawing 411.3017 – FIG. 8C** |
|  |  |



| B&P Drawing 113-945 – FIG. 1D | Prescott Drawing 411.3017 – FIG. 8D |
| B&P Drawing 113-945 – FIG. 1E | Prescott Drawing 411.3017 – FIG. 8E |

| B&P Drawing 113-945 – FIG. 1F | Prescott Drawing 411.3017 – FIG. 8F |
|---|---|
| B&P Drawing 113-945 – FIG. 1G | Prescott Drawing 411.3017 FIG. – 8G |



96.   Prescott drawing 411.3017 is dated November 19, 2019. On information and belief, Prescott created the B&P drawing 113-945 CAD file on or around November 19, 2019.

### Prescott Drawing 411.4066

97.   The following is a side-by-side comparison of B&P drawing 133-945 (Figure 2) depicting a dished head for a vertical planetary batch mixer with the copy made by Defendants (Figure 9), labeled 411.4066 (hereafter, "Prescott drawing 411.4066"). (Exhibits D and N at 5). The images have been annotated to highlight similarities between the two drawings.

| B&P Drawing 133-945 – FIG. 2 | Prescott Drawing 411.4066 – FIG. 9 |
|---|---|



98.   As is evident by comparing the original B&P work at Figure 2 to the Prescott copy at Figure 9, the Prescott drawing is a copy and/or derivative work, as a CAD file, of the B&P image. The layout, scale, measurements, and notations are copies of the same text found in Figure 2, with the following exceptions:

Defendants (a) converted the handwritten notations to digital text, and (b) intentionally removed B&P's CMI and replaced it with false information suggesting Prescott owns the work.

99.   Table 2, below, is a side-by-side comparison of close-up sections of Figures 2 and 9. The images have been annotated to highlight similarities between B&P drawing 133-945 and Defendants' copy and/or derivative work.





100.   Prescott drawing 411.4066 is dated March 11, 2020. On information and
belief, Prescott created the CAD file of B&P drawing 133-945 on or around
March 11, 2020.

**Prescott Drawing 411.4067**

101.  The following is a side-by-side comparison of B&P drawing 132-945 (Figure 3) depicting a bearing housing for a vertical planetary batch mixer with the copy made by Defendants (Figure 10), labeled 411.4067 (hereafter, "Prescott drawing 411.4067"). (Exhibit F and N at 6). The images have been annotated to highlight similarities between the two drawings.

| **B&P Drawing 132-945 – FIG. 3** | **Prescott Drawing 411.4067 – FIG. 10** |
|---|---|
|  | |

102.  As is evident by comparing the original B&P work at Figure 3 to the Prescott copy at Figure 10, the Prescott drawing is a copy and/or derivative work, as a CAD file, of the B&P image. The layout, scale, measurements, and notations are copies of the same text in Figure 3, with the following exceptions: Defendants (a) converted the handwritten notations to digital text, and (b) intentionally removed B&P's CMI and replaced it with false information suggesting Prescott owns the work.

103. Table 3, below, is a side-by-side comparison of close-up sections of Figures 3 and 10. The images have been annotated to highlight similarities between B&P drawing 132-945 and Defendants' copy and/or derivative work.

| Table 3: Comparison of B&P Drawing 132-945 with Prescott Drawing 411.4067 | |
| --- | --- |
| **B&P Drawing 132-945 – FIG. 3B** | **Prescott Drawing 411.4067 – FIG. 10B** |
|  |  |
| **B&P Drawing 132-945 – FIG. 3C** | **Prescott Drawing 411.4067 – FIG. 10C** |
|  |  |



| B&P Drawing 132-945 – FIG. 3D | Prescott Drawing 411.4067 – FIG. 10D |
|---|---|
| B&P Drawing 132-945 – FIG. 3E | Prescott Drawing 411.4067 – FIG. 10E |

104. Prescott drawing 411.4067 is dated March 11, 2020. On information and belief, Prescott created the CAD file of B&P drawing 132-945 on or around March 11, 2020.

## Prescott Drawing 411.4072

105. The following is a side-by-side comparison of B&P drawing 134-945 (Figure 4) depicting a support housing ring for a vertical planetary batch mixer with

the copy made by Defendants (Figure 11), labeled 411.4072 (hereafter, "Prescott drawing 411.4072"). (Exhibits H and N at 7). The images have been annotated to highlight similarities between the two drawings.

| B&P Drawing 134-945 – FIG. 4 | Prescott Drawing 411.4072 – FIG. 11 |
|---|---|
|  | |

106. As is evident by comparing the original B&P work at Figure 4 to the Prescott copy at Figure 11, the Prescott drawing is a copy and/or derivative work, as a CAD file, of the B&P image. The layout, scale, measurements, and notations are copies of the same text in Figure 4, with the following exceptions: Defendants (a) converted the handwritten notations to digital text, and (b) intentionally removed B&P's CMI and replaced it with false information suggesting Prescott owns the work.

107. Table 4, below, is a side-by-side comparison of close-up sections of Figures 4 and 11. The images have been annotated to highlight similarities between B&P drawing 134-945 and Defendants' copy and/or derivative work.

| Table 4: Comparison of B&P Drawing 134-945 with Prescott Drawing 411.4072 | |
|---|---|
| **B&P Drawing 134-945 – FIG. 4B** | **Prescott Drawing 411.4072 – FIG. 11B** |
| **B&P Drawing 134-945 – FIG. 4C** | **Prescott Drawing 411.4072 – FIG. 11C** |
| **B&P Drawing 134-945 – FIG. 4D** | **Prescott Drawing 411.4072 – FIG. 11D** |



| B&P Drawing 134-945 – FIG. 4E | Prescott Drawing 411.4072 – FIG. 11E |
|---|---|
| | |



| B&P Drawing 134-945 – FIG. 4F | Prescott Drawing 411.4072 – FIG. 11F |
|---|---|

| B&P Drawing 134-945 – FIG. 4G | Prescott Drawing 411.4072 – FIG. 11G |
|---|---|



108.  Prescott drawing 411.4072 is dated November 22, 2019. On information and belief, Prescott created the CAD file of B&P drawing 134-945 on or around November 22, 2019.

## Defendants' Infringement of B&P's Protected Works

109.   On information and belief, Defendants converted B&P's hardcopy files that Miller took into digital files. Defendants then systematically converted B&P's hardcopy files into CAD files that they could manipulate. In other words, Prescott and Miller made unauthorized copies of and/or derivative works from B&P's drawings.

110.   Indeed, Miller has admitted in sworn testimony that he has used other B&P drawings as the source for certain Prescott drawings.

111.   Upon information and belief, Miller intentionally, and without authorization, took and/or gained access to copies of the B&P drawings after he left B&P's employ for the purposes of making unauthorized reproductions and derivative works, and subsequently created and distributed unauthorized copies and derivative works of B&P's drawings.

112.   Upon information and belief, and in order to solicit and service customers or respond to Requests for Proposal, Defendants will continue to violate B&P's rights in the drawings by further distributing unauthorized reproductions or derivative works based on the B&P drawings unless stopped.

113.   Upon information and belief, Defendants maintain physical and digital copies of unauthorized reproductions and works derivative of the B&P

drawings identified in Exhibit A to distribute for their own financial gain, namely to obtain quotes for parts to compete against B&P.

114.   Upon information and belief, Defendants maintain physical and digital copies of the original B&P drawings identified in Exhibit A to consult from time to time as references for the unauthorized reproductions and derivative works Defendants create and distribute.

### B&P Learns of CMI Alteration and Removal

115.   On or about April 8, 2020, upon receiving the Cambron email attaching drawings distributed by Defendants in order to seek manufacturing assistance (see Exhibit N), B&P realized that Defendants, in addition to infringing B&P's works, had the audacity to claim ownership and rights to the drawings as their own original works. Indeed, Defendants went even further, noting on the Prescott drawings that "copying or reproduction is prohibited without written permission of [Prescott]."

116.   Defendants knew, because of Miller's prior employment and the manner in which he took or received B&P's drawings, that the drawings were owned by B&P and that neither he nor Prescott had authority to display or distribute copies or works derivative of B&P's drawings.

117.   Defendants knew that it was critical to be able to present the drawings as their own in order to secure winning bids on projects. To conceal their

infringement and convince third parties that Prescott independently created and owned the drawings—despite knowing the works were authored and owned by B&P—Defendants knowingly and intentionally altered and removed CMI from B&P's works. In particular, Defendants removed B&P's name from the works, and affixed the name and address of Prescott in the title block of the drawings.

## CMI of Prescott Drawing 411.3017

118.   Figure 8A is an expanded view of the title block containing fraudulent CMI for Prescott drawing 411.3017, Exhibit N at 3–4, by which Defendants claim that the work was drawn by "M.A.M." on November 19, 2019 and further identifies Prescott, by name and address, as the owner of the drawing.



**Prescott Drawing 411.3017 – FIG. 8A**

119.   Defendants intentionally removed B&P's CMI from the unauthorized copy of B&P 113-945 drawing in violation of the DMCA.

120.    Further, Defendants knowingly replaced the accurate CMI on the

unauthorized copy of B&P drawing with false CMI, as reflected in the

infringing Prescott drawing 411.3017—all in violation of the DMCA.

### CMI of Prescott Drawing 411.4066

121.    Figure 9A is an expanded view of the title block containing fraudulent CMI

for Prescott drawing 411.4066, Exhibit N at 5, by which Defendants claim

that the work was drawn by "M.A.M." on March 11, 2020 and further

identifies Prescott, by name and address, as the owner of the drawing.



**Prescott Drawing 411.4066 – FIG. 9A**

122.    Defendants intentionally removed B&P's CMI from the unauthorized copy

of B&P 133-945 drawing in violation of the DMCA.

123.    Further, Defendants knowingly replaced the original CMI on the

unauthorized copy of B&P drawing with false CMI, as reflected in the

infringing Prescott drawing 411.4066—all in violation of the DMCA.

## CMI of Prescott Drawing 411.4067

124.   Figure 10A is an expanded view of the title block containing fraudulent CMI
for Prescott drawing 411.4067, Exhibit N at 6, by which Defendants claim
that the work was drawn by "M.A.M." on March 11, 2020 and further
identifies Prescott, by name and address, as the owner of the drawing.



**Prescott Drawing 411.4067 – FIG. 10A**

125.   Defendants intentionally removed B&P's CMI from the unauthorized copy
of B&P 132-945 drawing in violation of the DMCA.

126.   Further, Defendants knowingly replaced the original CMI on the
unauthorized copy of B&P drawing with false CMI, as reflected in the
infringing Prescott drawing 411.4067—all in violation of the DMCA.

## CMI of Prescott Drawing 411.4072

127.   Figure 11A is an expanded view of the title block containing fraudulent CMI
for Prescott drawing 411.4072, Exhibit N at 7, by which Defendants claim

that the work was drawn by "M.A.M." on November 22, 2019 and further

identifies Prescott, by name and address, as the owner of the drawing.



**Prescott Drawing 411.4072 – FIG. 11A**

128.  Defendants intentionally removed B&P's CMI from the unauthorized copy

of B&P 134-945 drawing in violation of the DMCA.

129.  Further, Defendants knowingly replaced the original CMI on the

unauthorized copy of B&P drawing with false CMI, as reflected in the

infringing Prescott drawing 411.4072—all in violation of the DMCA.

**Defendants' Removal and Alteration of CMI**

130.  Upon information and belief, Defendants took possession of copies of the

B&P drawings after B&P terminated Miller. Rather than inform B&P that

they possessed those drawings and make efforts to return them to B&P,

Defendants retained control of the works, knowingly made unauthorized

copies of them, removed B&P's CMI, replaced the CMI with false

information suggesting Prescott owned the works, and have been using and

distributing the infringing copies to compete with B&P.

131. Upon information and belief, Prescott, at the express direction of Miller, intentionally scanned copies of the B&P drawings and used a software program to convert the scanned images into one or more CAD files, subsequently and intentionally removed the original CMI, and then affixed falsified CMI designating Prescott as the owner of all rights in the drawings.

132. Alternatively, Prescott, at the express direction of Miller, used a computer program to create or draw infringing digital copies of works that were sourced from and are clear copies of the content of the B&P drawings, and then intentionally removed the original CMI, replacing it with falsified CMI designating Prescott as the owner of all rights in the images.

133. Upon information and belief, Defendants maintain physical and digital copies of unauthorized reproductions and derivative works of the B&P drawings identified in Exhibit A that infringe B&P's rights. Also upon information and belief, Defendants' copies or files of these infringing works all contain altered, falsified CMI.

134. Defendants have knowingly and intentionally distributed unauthorized reproductions or derivative copies of the infringed B&P drawings with altered, falsified CMI since at least April 7, 2020, when Defendants directed a Prescott employee to distribute the drawings by email to vendors in order to obtain quotes for parts.

135. Upon information and belief, Miller personally and intentionally participated in the unauthorized removal of the genuine CMI from B&P's drawings and unauthorized copies or derivative works, as well as in the replacement of that CMI with falsified information, with the intention of distributing infringing reproductions and/or derivative works that suggest Prescott to be the owner of the works.

136. Defendants knowingly and intentionally distributed these infringing drawings for financial gain, namely to obtain quotes for parts and jobs to compete against B&P.

137. At all times relevant to the claims asserted herein, Miller had the right and ability to supervise Prescott's infringing conduct and DMCA violations in his capacity as Prescott's owner, CEO, and founder.

138. Miller has an obvious and direct financial interest in Prescott's activities by virtue of his ownership of Prescott and status as CEO of the company.

139. Upon information and belief, Prescott and Miller have and will continue to financially profit from distributing infringing versions of B&P's drawings with altered, falsified CMI unless enjoined by this Court.

## **Prescott Trades Off of B&P's Goodwill**

140.  On information and belief, Prescott was hired to service the Vertical Mixer
      in 2016 or 2017.  On information and belief, as part of its services, Prescott
      replaced one or more parts of the Vertical Mixer.

141.  At present, the majority of the Vertical Mixer equipment and design remains
      the original build by B&P.  Furthermore, the Vertical Mixer was designed
      using the proprietary drawings of B&P.

142.  In or around October 2020, B&P learned that at least the logo plate on the
      Vertical Mixer identifying B&P's "Baker Perkins" mark and the B&P Globe
      Logo had been removed, and replaced with Prescott's mark.  A photograph
      depicting the Vertical Mixer with Prescott's mark is shown below.  Exhibit
      O.



**B&P Vertical Mixer at McAlester – FIG. 12**

143. Based on information and belief, Prescott's mark had been placed on at least one other location of the Vertical Mixer.

144. On information and belief, Prescott, at the express direction of Miller, removed the logo plate on the Vertical Mixer identifying the "Baker Perkins" mark and the B&P Globe Logo.

145. On information and belief, Prescott, at the express direction of Miller, placed Prescott's mark on the Vertical Mixer where the logo plate had been. In removing B&P's marks, Defendants' intended purpose was to give the

impression that B&P's Vertical Mixer was designed and manufactured by
Prescott.

146.   On information and belief, Prescott, at the express direction of Miller,
removed additional source identifiers from the Vertical Mixer identifying the
"Baker Perkins" mark and the B&P Globe Logo.

### The Full Scope of Defendants' Unlawful Conduct Is Unknown

147.   Upon information and belief, Defendants maintain physical and/or digital
copies of other original B&P works in addition to those listed in Exhibit A,
to hold for an indefinite duration for the purposes of creating unauthorized
reproductions or derivative works and distributing those works to potential
customers and vendors.

148.   Upon information and belief, Defendants have created and maintained
physical and/or digital copies of other original B&P works with altered and
falsified CMI in addition to those listed in Exhibit A, to hold for an
indefinite duration for the purposes of distributing those works to potential
customers and vendors.

149.   Upon information and belief, Defendants have removed B&P's "Baker
Perkins" mark and the B&P Globe Logo and replaced it with Prescott's
mark on additional B&P machinery besides the Vertical Mixer in McAlester
to trade off the goodwill and reputation of B&P.

48

## COUNT I – DIRECT COPYRIGHT INFRINGEMENT
### (Against All Defendants)

150. Plaintiff adopts and incorporates paragraphs 1 through 150 above by reference as fully as if set forth herein verbatim.

151. B&P owns the copyright, exclusive rights under copyright or accrued causes of action to the B&P drawings with respect to the display, reproduction, and distribution of works at issue in this action.

152. B&P has registered copyrights protecting the B&P drawings.  Exhibits C, E, G, I.

153. Without B&P's consent or authorization, Defendants have reproduced, displayed, caused to be reproduced and copied, distributed or made derivatives of the B&P drawings.

154. The actions and conduct of Defendants as described above constitute direct and intentional infringement upon the exclusive rights granted to B&P under 17 U.S.C. § 106 to display, reproduce, distribute to the public, and create derivative works of the B&P drawings.

155. Such actions and conduct constitute repeated copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 501.

156. As a direct and proximate result of Defendants' copyright infringement described above, B&P is entitled to relief including, but not limited to, actual damages, statutory damages, profits of the Defendants, statutory costs and

attorneys' fees, and prejudgment interest. B&P is further entitled to an order

impounding all unlawful copies and all tapes, articles, negatives, computers,

and other means by which such copies may be reproduced, and to an order

for the destruction of such materials.

157.    B&P has no adequate remedy at law for, and is being irreparably harmed by,

Defendants' infringement of copyrights and exclusive rights under copyright

as set forth above, and such harm will continue unless Defendants are

enjoined by this Court. Pursuant to 17 U.S.C. § 503, B&P is entitled to

preliminary and permanent injunctions prohibiting further infringement of

the B&P drawings.

158.    Defendants' infringement has been and is willful.

## COUNT II – REMOVAL OF CMI IN VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT
### (Against All Defendants)

159.    Plaintiff adopts and incorporates paragraphs 1 through 158 above by

reference as fully as if set forth herein verbatim.

160.    The B&P drawings contain and/or include B&P's CMI.

161.    Defendants have intentionally removed the CMI material affixed to the B&P

works by deleting the original CMI. Defendants have then reproduced,

displayed and distributed, in violation of 17 U.S.C. § 1202(b)(1), or have

distributed the works knowing that the CMI has been removed without

authority of the copyright owner or the law, in violation of 17 U.S.C.
§ 1202(b)(3).

162.   Defendants' actions, as described above, constitute violations of the DMCA
in that Defendants know, or have reasonable grounds to know such actions
induce, enable, facilitate or conceal an infringement.

163.   As a direct and proximate result of Defendants' violations of the DMCA,
B&P is entitled to statutory damages up to a maximum amount of $25,000
with respect to each act of circumvention, product, component, or
performance by the Defendants, pursuant to 17 U.S.C. § 1203(c)(3).

164.   B&P further is entitled to its attorneys' fees and full costs pursuant to 17
U.S.C. § 1203(b)(4) and (5).

165.   B&P has no adequate remedy at law for, and is being irreparably harmed by,
Defendants' violations, and such harm will continue unless Defendants are
enjoined by this Court. Pursuant to 17 U.S.C. § 1203(b)(1), B&P is entitled
to preliminary and permanent injunctions prohibiting further violations of
the DMCA.

166.   Pursuant to 17 U.S.C. § 1203(b)(2), B&P is further entitled to an order
impounding, modifying, or destroying all devices and products in the
custody or control of Defendants that have been involved in the violations.

## COUNT III – FALSIFICATION OF CMI IN VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT

**(Against All Defendants)**

167. Plaintiff adopts and incorporates paragraphs 1 through 166 above by reference as fully as if set forth herein verbatim.

168. The B&P drawings contain and/or include B&P's CMI.

169. Defendants have intentionally falsified the CMI material affixed to the B&P works by replacing it with falsified CMI. Defendants have then reproduced, displayed and distributed, in violation of 17 U.S.C. § 1202(b)(1), or have distributed the works knowing that the CMI has been altered without authority of the copyright owner or the law, in violation of 17 U.S.C. § 1202(b)(3).

170. Defendants' actions, as described above, constitute violations of the DMCA in that Defendants know, or have reasonable grounds to know such actions induce, enable, facilitate or conceal an infringement.

171. As a direct and proximate result of Defendants' violations of the DMCA, B&P is entitled to statutory damages up to a maximum amount of $25,000 with respect to each act of circumvention, product, component, or performance by Defendants, pursuant to 17 U.S.C. § 1203(c)(3).

172. B&P further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b)(4) and (5).

173. B&P has no adequate remedy at law for, and is being irreparably harmed by, Defendants' violations, and such harm will continue unless Defendants are

enjoined by this Court. Pursuant to 17 U.S.C. § 1203(b)(1), B&P is entitled to preliminary and permanent injunctions prohibiting further violations of the DMCA.

174. Pursuant to 17 U.S.C. § 1203(b)(2), B&P is further entitled to an order impounding, modifying, or destroying all devices and products in the custody or control of Defendants that have been involved in the violations.

## COUNT IV – VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT
### (Against Miller)

175. Plaintiff adopts and incorporates paragraphs 1 through 174 above by reference as fully as if set forth herein verbatim.

176. Prescott makes unauthorized copies and derivatives of the B&P drawings and distributes those works.

177. On information and belief, Miller, as owner, CEO, and founder of Prescott, has the right and ability to supervise, control, and stop the infringing conduct of Prescott.

178. On information and belief, Miller has taken no action to stop Prescott's infringement and in fact, has encouraged infringement.

179. On information and belief, Miller directly and as a proximate result of his refusal to stop Prescott's infringement, has received direct financial benefits from that infringement.

180. Miller is liable for vicarious copyright infringement through his actions of authorizing the decisions to make copies and derivatives of the B&P drawings, and to distribute the B&P drawings that they knew or should have known were infringing.

181. As a direct and proximate result of conduct of Miller, B&P has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

## COUNT V – VICARIOUS LIABILITY FOR REMOVAL OF CMI IN VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT
### (Against Miller)

182. Plaintiff adopts and incorporates paragraphs 1 through 180 above by reference as fully as if set forth herein verbatim.

183. Prescott makes unauthorized copies and derivatives of the B&P drawings with altered CMI.

184. On information and belief, Miller, as owner, CEO, and founder of Prescott, has the right and ability to supervise, control, and stop the unlawful conduct of Prescott.

185. On information and belief, Miller has taken no action to stop Prescott's DMCA violations and in fact, has actively encouraged such conduct to hide Prescott's infringement of B&P's works.

186. On information and belief, Miller directly and as a proximate result of his refusal to stop Prescott's unlawful conduct, has received direct financial benefits from Prescott's violations of the DMCA.

187. Miller is liable for vicarious DMCA violations through his actions of authorizing the alteration and removal of the CMI of B&P's works, and distribution of B&P drawings with altered CMI that he knew or should have known was infringing.

188. As a direct and proximate result of conduct of Miller, B&P has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

## COUNT VI – VICARIOUS LIABILITY FOR FALSIFICATION OF CMI IN VIOLATION OF THE DIGITAL MILLENIUM COPYRIGHT ACT
### (Against Miller)

189. Plaintiff adopts and incorporates paragraphs 1 through 188 above by reference as fully as if set forth herein verbatim.

190. Prescott makes unauthorized copies and derivatives of the B&P drawings with falsified CMI.

191. On information and belief, Miller, as owner, CEO, and founder of Prescott, has the right and ability to supervise, control, and stop the unlawful conduct of Prescott.

192. On information and belief, Miller has taken no action to stop Prescott's DMCA violations and in fact, has actively encouraged such conduct to hide Prescott's infringement of B&P's works.

193. On information and belief, Miller directly and as a proximate result of his refusal to stop Prescott's unlawful conduct, has received direct financial benefits from Prescott's violations of the DMCA.

194. Miller is liable for vicarious DMCA violations through his actions of authorizing the falsification of the CMI of B&P's works, and distribution of B&P drawings with falsified CMI that he knew or should have known was infringing.

195. As a direct and proximate result of conduct of Miller, B&P has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

## COUNT VII – REVERSE PASSING OFF IN VIOLATION OF THE LANHAM ACT
### (Against All Defendants)

196. Plaintiff adopts and incorporates paragraphs 1 through 195 above by reference as fully as if set forth herein verbatim.

197. B&P has garnered substantial goodwill associated with the design and quality of its products through use of the "Baker Perkins" mark and B&P Globe Logo.

198. Prescott, at the express direction of Miller, falsely designated and misrepresented the source and quality of the Vertical Mixer by removing source identifying information that identified B&P as the designer and manufacturer of the Vertical Mixer and putting in its place information Prescott's tradename and mark.

199. Placement of Prescott's tradename and mark on B&P's products misrepresents the type and quality of products available from Prescott and is an attempt to trade on the goodwill associated with B&P's products and divert consumers away from B&P's product and services.

200. Defendants' false and fraudulent designations of the source of the Vertical Mixer are likely to cause consumer confusion as to the source of the Vertical Mixer, including without limitation, by causing consumers to falsely believe that B&P designed and/or manufactured the Vertical Mixer.

201. Defendants' false and fraudulent designations of the source of the Vertical Mixer constitute reverse passing-off and unfair competition in violation of B&P's rights under at least 15 U.S.C. § 1125(a).

202. On information and belief, Defendants' conduct was intentional and willful.

203. By attempting to trade on the goodwill associated with B&P's products, Defendants have caused harm to B&P's goodwill, its brand and to its business, including lost profits.

204. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure B&P's goodwill and erode its market share.

205. By virtue of Defendants' willful violation of the Lanham Act, including specifically 15 U.S.C. § 1125(a), B&P is further entitled to recover from Prescott and Miller all damages permitted thereunder for willfully passing off B&P's products as their own, including all direct and consequential damages, lost profits, defendants' profits, as well as treble damages to the extent provided by law, and all attorneys' fees and costs incurred in connection with this lawsuit.

**WHEREFORE**, Plaintiff B&P Littleford, LLC, having fully complained, prays for judgment against Defendant Prescott and Defendant Miller and respectfully requests the following particular relief:

1. Find Defendants jointly and severally liable to B&P for copyright infringement in violation of 17 U.S.C. § 501;

2. Find Miller to be vicariously liable for such copyright infringement;

3. Find Defendants to have intentionally and unlawfully removed copyright management information, and falsified copyright management information in violation of 17 U.S.C. § 1202;

4.   Find Defendants jointly and severally liable to B&P for reverse passing off in violation of 15 U.S.C. § 1125(a);

5.   Award B&P actual or statutory damages for the violations of 17 U.S.C. § 501, at B&P's election;

6.   Award B&P actual or statutory damages for the violations of 17 U.S.C. § 1202(a), at B&P's election;

7.   Award B&P actual or statutory damages for the violations of 17 U.S.C. § 1202(b), at B&P's election;

8.   Award B&P the sum of three times all profits derived by Defendants from its violation of 15 U.S.C. § 1125(a);

9.   Award B&P punitive damages in an amount to be determined at trial for Defendants' knowing, willful, and malicious conduct;

10.  Enter an Order permanently and preliminarily enjoining defendants, their officers, agents, servants, employees and attorneys, and other persons who are in active concert or participation with them (including Defendant Prescott's customers, vendors, and licensees) who receive actual notice of the injunction, from further distribution, copying, or unauthorized use of B&P's works (including derivative work based in any part on B&P's copyrighted images) with copyright management information removed;

11.    Enter an Order permanently and preliminary enjoining Defendants, their officers, agents servants, employees and attorneys, and other persons who are in active concert or participation with them (including Defendant Prescott's customers, vendors, and licensees) who receive actual notice of the injunction, from further infringement of the copyrights to B&P's works;

12.    Enter an Order permanently and preliminary enjoining Defendants, their officers, agents servants, employees and attorneys, and other persons who are in active concert or participation with them (including Defendant Prescott's customers, vendors, and licensees) who receive actual notice of the injunction, from removing B&P's mark or logo from B&P's products;

13.    Enter an Order permanently and preliminary enjoining Defendants, their officers, agents servants, employees and attorneys, and other persons who are in active concert or participation with them (including Defendant Prescott's customers, vendors, and licensees) who receive actual notice of the injunction, from applying Defendant Prescott's name or mark or any other colorable imitation of such names or marks to B&P's products;

14.     Enter an Order permanently and preliminary enjoining Defendants, their officers, agents servants, employees and attorneys, and other persons who are in active concert or participation with them (including Defendant Prescott's customers, vendors, and licensees) who receive actual notice of the injunction, from making any statements, representations, or acts that are likely to induce the belief that Defendants' business or products are in any way connected to B&P's business or products, or is sponsored, affiliated or approved by B&P;

15.     Award B&P pre- and post-judgment interest;

16.     Award B&P its costs in bringing this action and its attorneys' fees;

17.     Order the impoundment and/or destruction of the infringing articles; and

18.     Award B&P such other and further relief as this Court deems just and proper.

Dated: November 12, 2020

/s/ J. Michael Huget
J. Michael Huget (P39150)
mhuget@honigman.com
Deborah J. Swedlow (P67844)
bswedlow@honigman.com
HONIGMAN LLP
315 East Eisenhower Parkway, Suite 100
Ann Arbor, MI 48108
Phone: (734) 418-4200
Fax: (734) 418-4201

*Attorneys for Plaintiff, B&P Littleford, LLC*