UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

B&P LITTLEFORD, LLC,

                Plaintiff,                    Case No. 20-CV-13025

    v.                                    Hon. Thomas L. Ludington

PRESCOTT MACHINE, LLC, and
RAY MILLER,

                Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

On November 11, 2020, Plaintiff B&P Littleford, LLC filed a complaint against Defendants Prescott Machine, LLC and Ray Miller alleging copyright infringement and violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq. ("DMCA"), and the Lanham Act, 15 U.S.C. § 1051 et seq. ECF No. 1. On January 19, 2021, Defendants filed a joint motion to dismiss. ECF No. 16. Timely response and reply briefs have been filed. ECF Nos. 23, 24. For the reasons set forth below, Defendants' Motion to Dismiss will be denied.

### I.

### A.

Plaintiff B&P Littleford, LLC is a Saginaw-based company that manufactures "a wide variety of high quality, highly engineered equipment for large- and small-scale manufacturing applications such as mixers, dryers, extruders, compounders, kneaders, reaction vessels, Podbielniak Centrifuges, and centrifugal separation equipment."[1] ECF No. 1 at PageID.5. Plaintiff's earliest predecessor was Baker Perkins, Inc., which was formed in 1911. *Id.* at PageID.2.

---

[1] The factual allegations of the Complaint are assumed true for purposes of Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Baker Perkins, Inc., later merged with APV Chemical Machinery, Inc., and from 1987 until 1995, conducted business as "APV." *Id.* at PageID.2–3. "Through the merger, APV purchased, succeeded to, and retained all of the rights and liabilities of Baker Perkins, Inc., including all of Baker Perkins, Inc.'s assets, contractual obligations, and rights." *Id.* APV later sold "the assets of [the] chemical machinery business to B&P Process Equipment and Systems, L.L.C., a newly formed Delaware limited liability company with a principal place of business in Michigan." *Id.* at PageID.3. On January 1, 2017, B&P Process reincorporated as B&P Littleford, LLC, which "succeeded to and retained all the assets, rights, and liabilities of [B&P Process]." *Id.*

"In order to preserve institutional knowledge and assist vendors and customers," B&P employees created "detailed drawings comprising engineering schematics . . . of B&P's devices." *Id.* at PageID.5. These drawings "are the product of many hundreds of thousands of dollars spent on research and development and thousands of engineering hours." *Id.* at PageID.6. Plaintiff claims that these drawings "are, by their nature, the subject of copyright protection under the laws of the United States." *Id.* at PageID.6.

In addition to engineering schematics, the B&P drawings also include certain "copyright management information" ("CMI"), including the name of the author and the owner of the drawing. The CMI appears in a box at the bottom of the drawing. As an example, B&P Drawing 113-945 is reprinted below.



**FIG. 1 – B&P Drawing 113-945**

ECF No. 1 at PageID.7. B&P Drawing 113-945 apparently depicts "a planetary support housing, i.e., an exterior case for the specialized planetary gearbox, for a vertical planetary batch mixer."[2] *Id.* Though difficult to read, the CMI at the bottom of the drawing appears to state that the drawing was prepared in 1962, that "Conzelmann" was the author, and that "[the] drawing is the property of Baker Perkins, Inc." *Id.* at PageID.8. The CMI box is reprinted in greater detail below.

**FIG. 1A – B&P Drawing 113-945**

---

[2] "A vertical planetary batch mixer is a device for mixing rocket fuel or other energetics to ensure the mixture is uniform and homogenous. Because of the corrosive and flammable nature of rocket fuel and energetics, safety design is critical." ECF No. 1 at PageID.8.

*Id.* The language on the left side of the CMI box purportedly shows that revisions were made to the drawing in 1964, 1967, 1983, and 1985. *Id.* at PageID.9.

Defendant Ray Miller's relationship with Plaintiff began in 1991, when he worked as national sales manager for APV. ECF No. 1 at PageID.19. After B&P Process acquired APV's chemical division in 1995, Miller became the President and CEO of B&P Process, as well as a shareholder and board member. *Id.* While working for Plaintiff, Miller had access to "B&P's drawings from various sources in both their physical (paper and microfilm) and digital file formats." *Id.* at PageID.20.

Plaintiff terminated Miller's employment in 2008. *Id.* Shortly thereafter, Miller formed Defendant Prescott Machine, LLC ("Prescott") where he serves as CEO and President. *Id.* "Prescott now competes directly with B&P in the field of manufacturing equipment for the process industries and aftermarket service of such manufacturing equipment." *Id.*

This case arises from two events that occurred after Miller and Plaintiff went their separate ways.

## 1.

In April 2020, one of Plaintiff's vendors, Cambron Engineering, Inc., notified Plaintiff that it had received "a series of drawings from a third party in connection with a request for parts for a vertical planetary batch mixer on behalf of a job for Prescott." *Id.* at PageID.22. Cambron forwarded the drawings to Plaintiff, which immediately recognized them as "CAD [computer-aided design] copies of its own original hand-drawn drawings for the same parts of its very own mixer, but with title blocks identifying Prescott as owner of the drawings." *Id.* One of the drawings appeared to be a copy of B&P Drawing 113-945, discussed above.

To illustrate, below is a side-by-side comparison of B&P Drawing 113-945 and Prescott Drawing 411.3017 provided in the Complaint. The highlighting is original to the Complaint and purports to represent similarities between the B&P and the Prescott drawings.



ECF No. 1 at PageID.7, 24. Plaintiff alleges that, in addition to B&P Drawing 113-845, Prescott copied at least three other B&P drawings. *See id.* at PageID.28–37 (comparing B&P Drawings 133-945, 132-945, and 134-945 with Prescott Drawings 411.4066, 411.4067, and 411.4072). Like B&P Drawing 113-945, the CMI for the other three B&P drawings indicates that they were prepared by "Conzelmann" in 1962, that "Baker Perkins, Inc." is the owner, and that revisions were made in 1985 (among other years). *Id.*

The Complaint also contains copyright registrations for the four B&P drawings at issue—all of which state that the drawings were completed in 1962 and that "Baker and Perkins" is the author. *See* ECF Nos. 1-4, 1-6, 1-8, 1-10.

## 2.

In October 2020, Plaintiff learned that Prescott had serviced a B&P-manufactured "14 PNM Vertical Mixer" (the "Vertical Mixer"). ECF No. 1 at PageID.16, 46. Plaintiff's predecessor sold the Vertical Mixer in 1977 to Thiokol Corporation. *Id.* at PageID.16. Sometime in the 1990s, the Vertical Mixer was acquired by the United States Army and moved to the McAlester Army Ammunition Plant in Oklahoma. *Id.* at PageID.18. When the Vertical Mixer was sold to Thiokol Corporation, the exterior of the machine was equipped with Plaintiff's trademarks, including the Baker Perkins Globe Logo. *Id.* at PageID.14–18. The Vertical Mixer now bears a Prescott mark where the Baker Perkins logo plate would have been. *Id.* at PageID.47. Accordingly, Plaintiff claims that Defendants replaced the Baker Perkins logo with the Prescott logo while servicing the Vertical Mixer. *Id.*

## B.

Plaintiff brought this action against Defendants Prescott and Miller on November 12, 2020 seeking damages and injunctive relief.[3] ECF No. 1. The Complaint alleges seven counts including copyright infringement (Count I), removal or falsification of copyright management information in violation of the DMCA (Counts II and III), vicarious liability for Miller (Counts IV, V, and VI), and "reverse passing off" in violation of the Lanham Act (Count VII). *Id.* at PageID.49–58.

---

[3] This is not the first time that Plaintiff has pursued Defendants in this Court. On May 7, 2018, Plaintiff, then represented by different counsel, filed a multi-count complaint against Prescott and Miller alleging, *inter alia*, trade secret misappropriation, breach of contract, and breach of fiduciary duties. *See* ECF No. 1 in No. 18-CV-11425. Summary judgment was eventually entered against Plaintiff, ECF No. 89 in No. 18-CV-11425, and Prescott and Miller were awarded attorney fees, ECF No. 101 in No. 18-CV-11425. The case remains pending on appeal before the United States Court of Appeals for the Sixth Circuit.

Defendants moved to dismiss the Complaint for failure to state a claim on January 19, 2021. ECF No. 16. Timely response and reply briefs have been filed. ECF Nos. 23, 24.

## II.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679 (quotations and citation omitted).

## III.

### A.

Count I alleges that Defendants infringed on Plaintiff's copyrights by using the B&P drawings to create the Prescott drawings discussed in Section I.A., *supra*. ECF No. 1 at PageID.49–50. Count IV appears to allege an alternative theory against Miller whereby he would be vicariously liable for Prescott's infringement. *Id.* at PageID.53–54.

A copyright is a form of intellectual property subsisting "in original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic, and sculptural works." 17 U.S.C. § 101(a). The copyright owner enjoys certain exclusive rights with respect to the

copyrighted work, including the right "to reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work." *Id.* § 106. Importantly, the copyright in an original work is typically broader in scope than the copyright in any subsequent derivative work. The copyright in a derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." *Id.* § 103(b).

"The elements of a copyright-infringement claim are (1) ownership of the copyright by the plaintiff and (2) copying by the defendant." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007). As a formality, the copyright owner must also register her copyright with the United States Copyright Office before filing suit. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citing 17 U.S.C. § 411(a)).

According to the Copyright Act of 1976, ownership of a copyright initially vests in the "author or authors of the work." 17 U.S.C. § 201(a). "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . ." *Id.* § 201(b). The Copyright Act defines a "work made for hire" as either a "work prepared by an employee within the scope of his or her employment" or "a work specially ordered or commissioned by use as a contribution to a collective work." *Hi-Tech Video Prods., Inc. v. Cap. Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (quoting 17 U.S.C. § 101). To determine whether a person is an "employee" for copyright purposes, courts must look to common law principles of agency. *See id.* at 1095–96 (listing ten nonexclusive common law factors).

In determining ownership, courts may also look to whether the putative owner has registered the copyright with the United States Copyright Office. While "the burden of proving ownership is at all times on the party claiming infringement," *BancTraining Video Sys. v. First Am. Corp.*, 956 F.2d 268 (6th Cir. 1992), "Congress has bestowed upon those who have obtained

copyright registration 'made before or within five years after first publication of the work' a presumption of validity '[i]n any judicial proceeding[ ].'" *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015) (quoting 17 U.S.C. § 410(c)), *aff'd sub nom. Star Athletica, L.L.C. v. Varsity Brands*, *Inc.*, 137 S. Ct. 1002 (2017).

In their opening brief, Defendants submit public records indicating that Plaintiff filed supplemental copyright registrations regarding the B&P drawings. ECF No. 16 at PageID.146–47. According to these supplemental registrations, Plaintiff has a registered copyright in the 1985 derivative drawings, not the original 1962 drawings. *See* ECF Nos. 16-3, 16-4, 16-5, 16-6. Defendants argue that the registration of the 1985 copyrights does not allow Plaintiff to assert an infringement claim based on the 1962 copyrights. ECF No. 16 at PageID.152–53.

As Plaintiff notes, however, copyrights "do[] not depend on registration" but "[are] obtained without formalities simply when a work has been fixed in a tangible medium of expression." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 538 (4th Cir. 2007). "Once fixation of an original work has taken place, the author has a copyright in the work, and registration with the Copyright Office serves only supporting roles." *Id.*

Furthermore, while copyright registration is a prerequisite to suit, many courts have held that the owner of both the original and derivative copyrights may sue for the infringement of any component of the work as long as the derivative copyright has been registered. *See, e.g.*, *id.* at 539 ("[E]ven if Phelps & Associates had only registered the Bridgeford Residence design *as a derivative work*, it could have sought damages and profits for infringement of all of the components, including those embodied in the Bell and Brown Residence design, because it held the copyright in all of the components.") (emphasis original); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 284 (4th Cir. 2003) (holding that registration of derivative work "was sufficient to permit

an infringement action on the underlying parts, whether they be new or preexisting."); *Murray Hill Publ'ns, Inc. v. ABC Communs., Inc.*, 264 F.3d 622, 632 (6th Cir. 2001) ("[I]t is logical that the registration of the derivative work would relate back to include the original work . . . ."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

To hold otherwise would, in effect, subject the creator of both the original and derivative works to the narrow protection of a derivative creator but without the attendant justification. As the Fourth Circuit explained,

> Both parties properly recognize that the copyright in a derivative work extends only to the new elements contributed by the author and does not extend to the underlying work. *See* 17 U.S.C. § 103(b). That provision assures that the author of a derivative work does not acquire ownership over constituent material that is already in the public domain or is owned by someone else. But when the author of the derivative work *also* has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author.[4]

*Christopher Phelps*, 492 F.3d at 538–39 (emphasis original). Accordingly, if Plaintiff plausibly alleges a copyright in both the original drawings and their derivatives, Plaintiff's registration of the derivatives would allow it to maintain an infringement action for any original component in the drawings.

Naturally, then, the question becomes whether Plaintiff has plausibly alleged a copyright in the 1985 and 1962 drawings. Defendants argue that because Plaintiff did not register its 1985 copyrights until 2020, they were not registered within five years of "publication," so the certificate of registration is not prima facie evidence of ownership. *See* ECF No. 16 at PageID.154.

"'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C.A. § 101. The Complaint

---

[4] The leading copyright treatise has also endorsed this exception. *See* Melville B. Nimmer & David Nimmer, 2 Nimmer on Copyright § 7.16[B][5][c] (Matthew Bender, Rev. Ed.).

alleges that Plaintiff and its predecessors "limited disclosure of the B&P drawings and the purposes for which the drawings could be used," ECF No. 1 at PageID.6, and that Miller was only able to access and copy the drawings because of his prior employment with Plaintiff, *id.* at PageID.20–21. For purposes of the pleading stage, these allegations plausibly allege that the 1985 copyrights were not "published" at the time of registration.[5]  Therefore, Plaintiff's certificates of registration constitute prima facie ownership of the 1985 copyrights.

With respect to the 1962 drawings, Defendants argue that because Plaintiff has not alleged that "Conzelmann," the putative drafter, was an employee of Baker Perkins, it has failed to plausibly allege a copyright. ECF No. 16 at PageID.154–155.

The Complaint states that "[i]n order to preserve institutional knowledge and assist vendors and customers . . . , [B&P] employees, in the normal course of and within the scope of their employment, created detailed drawings comprising engineering schematics . . . of B&P's devices." ECF No. 1 at PageID.5–6. Furthermore, the CMI of the B&P drawings at issue—in addition to identifying "Conzelmann" as author—expressly states that "th[e] drawing[s] [are] the property of Baker Perkins, Inc."[6]  *Id.* at PageID.9–13. From these allegations, one could plausibly infer that the 1962 drawings were works for hire prepared at the direction of Plaintiff's predecessor or by its employees within the scope of their employment.

---

[5] It would be inappropriate at this juncture to decide whether, as Defendants argue, Plaintiff's allegations have a factual basis. *Cf. Libertas Techs., L.L.C. v. Cherryhill Mgmt., Inc.*, No. 1:10-CV-935, 2012 WL 1714932, at *5 (S.D. Ohio May 15, 2012) ("Based on the allegations of the amended complaint that plaintiff has never published the software program, which the Court must accept as true on a motion to dismiss, the certificate of registration was necessarily made before first publication of the work."), r*eport and recommendation adopted sub nom. Libertas Techs., LLC v. Cherryhill Mgmt., Inc.*, No. 1:10CV935, 2012 WL 2930847 (S.D. Ohio July 18, 2012).

[6] Defendants argue that this language is unreliable because the term "property" is ambiguous, and because "Baker Perkins, Inc." might have been added after the drawing was created. *See* ECF No. 16 at PageID.155–56. Defendants' arguments ultimately rely on factual inferences that cannot be accepted on a motion to dismiss. Defendants may, of course, explore the relationship between "Conzelmann" and Plaintiff's predecessor during discovery.

Accordingly, Plaintiff has plausibly alleged a copyright in the original B&P drawings as well as the 1985 derivatives.

Defendants next argue that the Complaint fails to identify "the original elements of the drawings subject to copyright protection." ECF No. 16 at PageID.159. A "copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 537 (6th Cir. 2020). Defendants point to *Robert L. Stark Enterprises, Inc. v. Neptune Design Grp., LLC*, No. 1:16 CV 264, 2017 WL 1345195 (N.D. Ohio Apr. 12, 2017), and *Nat'l Med. Care, Inc. v. Espiritu*, 284 F. Supp. 2d 424 (S.D.W. Va. 2003), as cases where the copying of technical drawings fell short of infringement. *See* ECF No. 16 at PageID.158–60. Defendants' reliance is misplaced.

In *Robert L. Stark Enterprises*, the copyright owner asserted that its former business associates had infringed on its copyrights in certain technical drawings involving yogurt stores. *Robert L. Stark Enterprises*, 2017 WL 1345195, at *2. At the summary judgment stage, the copyright owner introduced evidence that the alleged infringers had obtained PDF versions of some of the copyrighted drawings and converted them into CAD files. *Id.* at *5. The district court held that this evidence created a question of fact as to whether those drawings had been "reproduced," and denied summary judgment on that ground. *Id.* With respect to the other copyrighted drawings, given the lack of direct evidence of copying, the copyright owner relied on a theory of "substantial similarity."[7]  *Id.* at *6. The court rejected this theory and granted summary judgment for the alleged infringers with respect to those drawings, explaining, "[A]t no[] point

---

[7] "Where there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Murray Hill Publications*, 361 F.3d at 316 (internal quotation marks and emphasis omitted).

d[id] [the copyright owner] discuss a specific copyrighted plan or compare such plan to any allegedly infringing plan or construction set." *Id.* at *7.

Similarly, in *National Medical Care*, the copyright owner sought a preliminary injunction enjoining the defendants from copying or possessing certain copyrighted drawings of dialysis centers and from opening dialysis centers allegedly based on the drawings. *Nat'l Med. Care*, 284 F. Supp. 2d at 430. The district court held that while "an as-built structure or feature cannot be an infringing copy of a technical drawing," the copyright owner "ha[d] met its burden in showing that [the defendant] infringed on its copyright by copying portions of the [technical drawings] and submitting the copied portions to the City of South Charleston as [] construction drawings." *Id.* at 435, 439. According to the court, "the expressive content in [the technical drawings] exist[ed] in the manner in which the components are arranged." *Id.* at 437. The defendants were thus enjoined from reproducing, possessing, and otherwise using the copyrighted drawings. *Id.* at 439.

As an initial matter, both cases support Plaintiff's basic theory that the unauthorized reproduction of copyrighted technical drawings constitutes infringement. Furthermore, insofar as the cases are distinguishable, Plaintiff's infringement claim is not premised on any as-built structures, *cf. Nat'l Med. Care*, 284 F. Supp. 2d at 435 ("[A]n as-built structure or feature cannot be an infringing copy of a technical drawing."), and the Complaint clearly identifies purported similarities between the B&P and Prescott drawings, *cf. Robert L. Stark Enterprises*, 2017 WL 1345195, at *7 (N.D. Ohio Apr. 12, 2017) ("[A]t not point does defendant discuss a specific copyrighted plan or compare such plan to any allegedly infringing plan.").

Moreover, both *Robert L. Stark Enterprises* and *National Medical Care* were decided on an evidentiary record that has yet to be developed in this case. The issue here is not whether there is a triable issue of fact or if Plaintiff is likely to prevail on the merits, but whether the factual

allegations in the Complaint, accepted as true, plausibly allege the infringement of a copyright. The foregoing discussion demonstrates that they do.

Accordingly, the Complaint plausibly alleges that Plaintiff owns copyrights in the B&P drawings and that Defendants infringed on those copyrights. Defendants' Motion to Dismiss will be denied with respect to Counts I and IV.[8]

**B.**

Counts II and III allege that Defendants intentionally removed or falsified the CMI from the B&P drawings when they created the Prescott drawings. ECF No. 1 at PageID.50–53. Counts V and VI appear to allege an alternative theory against Miller whereby he would be vicariously liable for Prescott's alteration of the CMI. *Id.* at PageID.54–56.

The DMCA prohibits the knowing or intentional removal, alteration, or falsification of CMI, which includes "the title and other information identifying the work," "the name of . . . the author," and "the name of . . . the copyright owner," whether in tangible or "digital form." 17 U.S.C. § 1202.

Here, Plaintiff alleges that Defendants scanned physical copies of Plaintiff's copyrighted drawings to convert them into CAD files. *Id.* at PageID.43–44. Once converted, Defendants allegedly replaced Plaintiff's CMI with their own "falsified CMI designating Prescott as the owner of all rights in the drawings." *Id.* at PageID.44.

---

[8] Defendants' related request to dismiss Plaintiff's claim for statutory damages and attorney fees will also be denied. While Defendants correctly note that statutory damages and attorney fees are only available for infringement occurring after registration, 17 U.S.C. § 412, Plaintiff plausibly alleges that the full scope of Defendants' infringement is yet unknown. ECF No. 1 at PageID.48. Accordingly, the question of statutory damages and attorney fees should not be reached until the parties have had some opportunity for fact discovery. *See Marlon Blackwell Architects, P.A. v. HBG Design, Inc.*, No. 4:19-CV-00925 KGB, 2020 WL 6787921, at *3 (E.D. Ark. Nov. 18, 2020) (denying without prejudice motion to dismiss claim for statutory damages and attorney fees where "the question of how many infringements have occurred and on what dates which parties commenced each such infringement are ones to be resolved after the benefit of factual discovery").

Defendants argue that these allegations are inadequate because there is no suggestion that Defendants "took the physical copies of the B&P drawings and removed or changed the CMI information" or manipulated the CMI in the original electronic files. ECF No. 16 at PageID.162. In their reply brief, Defendants clarify their position that the DMCA does not extend to the manipulation of CMI in derivative works. ECF No. 24 at PageID.345–46.

However, Plaintiff's claim could be construed as alleging the manipulation of CMI in a copy of the original work, which some cases have found to be actionable under the DMCA. *See, e.g.*, *EBC Brakes USA, Inc. v. Teagan*, No. 11-CV-12907, 2013 WL 12181866, at *8 (E.D. Mich. Nov. 4, 2013) (finding prima facie claim for DMCA violation where "[defendant] digitally removed the 'EBC' emblem from copyrighted images of EBC products and distributed the altered photographs in advertisements for [defendant's] products"); *Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *1–4 (C.D. Cal. Feb. 12, 2015) (denying motion to dismiss where defendants allegedly photographed a mural and digitally removed the authors' signatures from the image). Defendants note that the court in *Robert L. Stark Enterprises* rejected a similar PDF-to-CAD conversion theory, but that case turned on a CAD process that may not have been used here. *See Robert L. Stark Enterprises*, 2017 WL 1345195, at *11 ("To the extent [the CAD process at issue] could arguably constitute copying, there is no evidence even suggesting that the CMI was removed during this process. Accordingly, these actions are not sufficient to establish a violation of the DMCA.").

The legal validity of Plaintiff's DMCA claims may be revisited once there is some factual record as to what sort of CMI manipulation, if any, occurred. At this stage, however, Plaintiff has plausibly alleged that Defendants violated the DMCA. Defendants' Motion to Dismiss will be denied with respect to Counts II, III, V, and VI.

**C.**

Count VII alleges that Defendants removed the B&P logo from the Vertical Mixer and replaced it with their own in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. ECF No. 1 at PageID.56–58.

The Lanham Act provides, in relevant part,

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Count VII alleges a species of "false designation" known as "reverse passing off" or "reverse palming off." Reverse passing off, and its relationship to the Lanham Act, was previously summarized by the Fifth Circuit:

The Lanham Act's prohibitions against a false description or false designation of origin primarily extend to two types of activities: (1) the false advertising of goods or services; and (2) "palming off," which involves selling one's goods under the name of a competitor. *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir.1988). However, it also reaches merchandising practices or conduct that are " 'economically equivalent' to palming off." *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981). Such practices include a false designation of origin through "reverse palming off," which may be accomplished by "remov[ing] or obliterat [ing] the original trademark, without authorization, before reselling goods produced by someone else." *Id.*

Reverse palming off occurs with the direct misappropriation of the services or goods of another. *See id.* at 606–07 (director removed an actor's name from the

credits and advertising and replaced it with another actor's name); *see also Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1213, 1221 (8th Cir.) (in sales literature, a farm equipment manufacturer used photographs of a competitor's grain trailer that had been labeled as its own product), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name. *See Arrow United Indus., Inc. v. Hugh Richards, Inc.*, 678 F.2d 410, 412, 415 (2d Cir.1982) (preliminary injunction issued prohibiting defendant from modifying Arrow–Foil dampers in size and other minor respects and relabeling them); *Matsushita Elec. Corp. of Am. v. Solar Sound Sys., Inc.*, 381 F.Supp. 64, 66–67, 70 (S.D.N.Y.1974) (defendant enjoined from using one of plaintiff's radios, which had been slightly modified and then relabeled, to advertise the sale of defendant's radio).

Traditional and reverse palming off activities have both been recognized as wrongful because they involve attempts to misappropriate another's talents. *Lamothe*, 847 F.2d at 1406–07 (quoting Smith, 648 F.2d at 607); *Rosenfeld v. W.B. Saunders*, 728 F.Supp. 236, 241 (S.D.N.Y.1990). Reverse palming off imposes additional harm by depriving "the originator of the misidentified product ... of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Smith*, 648 F.2d at 607. The ultimate purchaser is harmed as well by the loss of knowledge of and possible deception regarding the true source of the product or service. *Id.*

*Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990). According to the Sixth Circuit, "[a] Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion."[9] *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).

Here, Plaintiff claims that Defendants willfully "remov[ed] source identifying information that identified B&P as the designer and manufacturer of the Vertical Mixer and put[] in its place [] Prescott's tradename and mark." ECF No. 1 at PageID.57. Plaintiff claims that this false designation "[is] likely to cause consumer confusion as to the source of the Vertical Mixer," and

---

[9] In assessing whether the false designation is likely to cause confusion, the Sixth Circuit considers eight factors. *See Johnson*, 149 F.3d at 502–03 (listing eight nonexclusive factors). These factors are not at issue here.

that "[b]y attempting to trade on the goodwill associated with B&P's products, Defendants have caused harm to B&P's goodwill, its brand and to its business, including lost profits." *Id.*

Defendants first argue that the Lanham Act claim is deficient because the Complaint does not allege that "any or all of the B&P marks still existed on the mixer" when Defendants serviced it. ECF No. 16 at PageID.164. However, as indicated above, the Complaint specifically alleges that Defendants replaced the B&P marks with Prescott marks. ECF No. 1 at PageID.57. Whether that allegation is true is a question of fact that cannot be decided on a motion to dismiss.

Defendants next argue that the Lanham Act claim should be dismissed because the Complaint "does not allege that Defendants ever sold the mixer and does not allege that Defendants performed the service on the mixer without authorization of its owner." ECF No. 16 at PageID.163–64. Defendants rely on a line of cases suggesting that the Lanham Act does not prohibit a person from applying her trademarks to a competitor's product after repairing or servicing that product. *See, e.g.*, *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 793 (E.D. La. 2012*)*; *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 250–51 (S.D.N.Y. 2018). The court in *CheckPoint* went as far as holding that "the Lanham Act does not apply in the narrow category of cases where a trademarked product is repaired, rebuilt, or modified at the request of the product's owner" *CheckPoint*, 888 F. Supp. 2d at 793 (quoting *Karl Storz Endoscopy–America, Inc. v. Fiber Tech Med., Inc.*, 4 Fed. App'x 128, 131 (4th Cir. 2001)).

As Plaintiff notes, however, *CheckPoint* and *Gym Door Repairs* are distinguishable because in both cases, there was a party admission or testimony that the trademarks were added to promote repair services, rather than to misrepresent the origin of the product.[10] *See CheckPoint*,

---
[10] Both cases were also decided at the summary judgment stage.

888 F. Supp. 2d at 793 ("CheckPoint has presented evidence that RAM removed CheckPoint identifiers and applied RAM Repairs stickers to CheckPoint pumps when RAM repaired them. Guccione testified that this was done to identify the repair work as RAM's.") (footnote omitted); *Gym Door Repairs*, 331 F. Supp. 3d at 251 ("As the plaintiffs themselves wrote, the sticker is affixed on the Safe Path System by the Tri-State and Guardian Defendants 'in order to promote their maintenance and repair services.'") (emphasis omitted). Here, Plaintiff alleges that Defendants replaced the B&P logo because they intended to mislead the public as to the origin of the Vertical Mixer. ECF No. 1 at PageID.57.

To the extent that *CheckPoint* embraces a broader rule limiting reverse passing off claims to the sale of goods, that rule is neither binding on this Court nor persuasive. As an initial matter, there is nothing in the plain language of the Lanham Act to support such a limitation, *see* 15 U.S.C. § 1215(a), and the Sixth Circuit has previously found reversing passing off in the absence of a sale. *See Johnson*, 149 F.3d at 503 (affirming Lanham Act violation where architect replaced competitor's name and seal on building plans and submitted the altered plans for approval). Indeed, the Lanham Act prohibits the "use[] in commerce" of "any false designation of origin," with no apparent distinction between sales and other commercial uses. Furthermore, the principal case cited in *CheckPoint* did not even involve a reverse passing off claim.[11]  *See Karl Storz Endoscopy-Am.*, 4 F. App'x at 131 ("In the present case, Fiber Tech has not copied a trademark but has modified a product bearing an existing, true, trademark.").

---

[11] In *Karl Storz Endoscopy Am.*, the issue was whether a repairer could be sued under the Lanham Act for reconditioning a trademarked product while leaving the original trademark intact. "It [was] undisputed that leaving the original marks intact [could] itself constitute trademark infringement." *Karl Storz Endoscopy Am.*, 4 F. App'x at 131. Relying on a line of cases involving owner-requested modifications, the Fourth Circuit declined to extend the Lanham Act to "repairs or modifications made at the request of the owner, at least absent indications that the owner intends to sell the products to third parties." *Id.* at 131–32.

Based on the foregoing, Plaintiff has plausibly alleged that Defendants falsely designated the Vertical Mixer as their own in violation of the Lanham Act. Defendants' Motion to Dismiss will be denied with respect to Count VIII.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 16, is **DENIED**.

Dated: March 30, 2021                                        s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge