UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

B&P LITTLEFORD, LLC,

                        Plaintiff,                              Case No. 1:20-cv-13025

v.                                                              Honorable Thomas L. Ludington
                                                               United States District Judge
PRESCOTT MACHINE, LLC and RAY
MILLER,

                        Defendants.
_____/

**OPINION AND ORDER (1) SUSTAINING AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER, (2) AFFIRMING AND REVERSING IN PART MAGISTRATE JUDGE'S ORDER, AND (3) DIRECTING DEFENDANTS TO RESPOND TO DISCOVERY REQUESTS**

This matter is before this Court upon Plaintiff's objections to Magistrate Judge Patricia T. Morris's order denying Plaintiff's motion to compel. ECF No. 66. For the reasons stated hereafter, Plaintiff's objections will be sustained and overruled in part; the order will be affirmed and reversed in part; and Defendants will be directed to respond to certain discovery requests.

**I.**

**A.**

This is a copyright-infringement action brought by Plaintiff B&P Littleford, a heavy-equipment manufacturer, against its former CEO, Ray Miller, and Miller's new company, Prescott Machine. In short, Plaintiff alleges that when Miller left B&P in 2008, he took numerous technical drawings with him, which he later used to make drawings for Prescott. ECF No. 1 at PageID.20–21. Specifically, Plaintiff alleges that Miller copied at least four drawings that were originally drafted by Plaintiff's predecessor in 1962. *Id.* at PageID.23–39. Further, Plaintiff alleges that in 2016 or 2017, Prescott employees removed Plaintiff's trademark from a machine while

servicing it. *Id.* at PageID.46–48. In addition to these specific allegations, Plaintiff also alleges "upon information and belief" that Defendants have other B&P drawings that they keep for "purposes of creating unauthorized reproductions or derivative works."[1] *See id.* at PageID.48.

### B.

In May 2018, Plaintiff brought a trade-secret action against Defendants based on many of the same allegations at issue here. In September 2019, this Court granted summary judgment for Defendants, finding that Plaintiff had not brought its claims under federal and state trade-secret law "within 3 years after the misappropriation [was] discovered or by the exercise of reasonable diligence should have been discovered." *See B&P Littleford, LLC v. Prescott Mach.*, 417 F. Supp. 3d 844, 851 (E.D. Mich. 2019) (quoting MICH. COMP. LAWS § 445.1907). Although Plaintiff had limited its complaint to the misappropriation of certain drawings used to rebuild a vertical planetary mixer for the United States Navy (the "China Lake drawings"), it became apparent during discovery that Plaintiff had reason to believe as early as 2012 that Miller possessed a number of other B&P drawings. *Id.* at 848. Indeed, Plaintiff had consulted with the FBI on several occasions between 2013 and 2015, *id.*, and represented that it had reason to believe that Miller had "the entire electronic files of B&P's technical drawings,"[2] ECF No. 78-2 at PageID.2791. In this way, Plaintiff sought to persuade the FBI to criminally investigate Defendants.

On appeal, the Sixth Circuit reversed, finding that summary judgment was "premature" and that "further factual development [was] required." *B&P Littleford, LLC v. Prescott Mach.*, No.

---

[1] Plaintiff's allegations are discussed in more detail in this Court's order denying Defendants' motion to dismiss. *See* ECF No. 25 at PageID.350–55.

[2] In a complaint to the FBI dated July 15, 2015, Plaintiff stated that it first began to suspect misappropriation based on vendor reports, which "began appearing in 2012." *B&P Littleford, LLC v. Prescott Mach.*, 417 F. Supp. 3d 844, 848 (E.D. Mich. 2019). At the time of the complaint, Plaintiff estimated that Defendants' "illegal distribution" of B&P drawings had been going on for more than four years. *Id.*

20-1449, 2021 WL 3732313, at *8 (6th Cir. Aug. 24, 2021). The Sixth Circuit agreed that "a continuing misappropriation constitutes a single claim," but it concluded that a "reasonable jury could conclude that the acquisition and use of the China Lake drawings in 2017 or 2018 was a *new* misappropriation"—in other words, not the same misappropriation that Plaintiff had complained to the FBI about in 2015. *Id.* at *5, *8.

## C.

In November 2020, Plaintiff brought this action alleging copyright infringement (Counts I and IV), violations of the Digital Millennium Copyright Act (DMCA) (Counts II, III, V, and VI),[3] 17 U.S.C. § 1201 *et seq.*, and violations of the Lanham Act (Count VII), 15 U.S.C. § 1051 *et seq.* ECF No. 1 at PageID.49–58.

In January 2021, Defendants filed a motion to dismiss for failure to state a claim. ECF No. 16. First, they argued that Plaintiff could not allege copyright infringement based on similarities between the four B&P drawings, created in 1962, and certain Prescott drawings, because Plaintiff only registered a copyright for drawings *derivative* of the 1962 drawings.[4] *See id.* at PageID.151–53. Similarly, Defendants argued that Plaintiff could not allege violations of the DMCA based on

---

[3] The DMCA prohibits the knowing or intentional removal, alteration, or falsification of "copyright management information" (CMI), which includes "the title and other information identifying the work," "the name of . . . the author," and "the name of . . . the copyright owner," whether in tangible or "digital form." 17 U.S.C. § 1202.

[4] The scope of copyright protection depends in large part on whether the copyright is in an original or derivative work. A copyright owner enjoys certain exclusive rights with respect to the copyrighted work, including the right to "reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106. But a copyright in a derivative work "extends only to the material contributed by the author of such [derivative] work, as distinguished from the preexisting material employed in the work." *Id.* § 103(a). As a result, the copyright protection for a derivative work tends to be much narrower than the protection for an original work.

Miller's modification of the four B&P drawings, because the DMCA does not protect CMI for derivative works.[5] *See id.* at PageID.161–63.

Defendants' motion was denied. First, this Court explained that "while copyright registration is a prerequisite to suit, many courts have held that the owner of both the original and derivative copyrights may sue for the infringement of *any component of the work* as long as the derivative copyright has been registered." ECF No. 25 at PageID.358 (emphasis added). Because Plaintiff plausibly alleged ownership of a copyright in the 1962 drawings, it could maintain an infringement action based on those drawings despite only having registered its copyrights in the 1985 drawings. *See id.* at PageID.360–61. Second, with respect to the DMCA claims, this Court held that even if the DMCA only protects CMI for original works, Plaintiff had plausibly alleged that Miller digitally manipulated the CMI for the original B&P drawings. *See id.* at PageID.363–64.

In the end, all seven counts of Plaintiff's complaint survived Defendants' motion to dismiss. On April 28, 2021, this Court entered a scheduling order providing for a discovery cutoff of November 12, 2021. ECF No. 29.

**D.**

As this Court recently remarked, discovery in the trade-secret case has been a rather "tumultuous" affair. *See B&P Littleford, LLC v. Prescott Mach.*, No. 1:18-cv-11425, slip op. at 5 n.4 (E.D. Mich. Oct. 20, 2021). The same can be said here.

Less than three months after the scheduling order was entered, Plaintiff filed its first motion to compel. ECF No. 33. Among other things, Plaintiff sought an order compelling Defendants to

---

[5] Defendants also challenged Plaintiff's Lanham Act claims on grounds that are not relevant here. *See* ECF No. 25 at PageID.365 (discussing sufficiency of Plaintiff's Lanham Act allegations).

produce all B&P drawings in their possession and to respond to Plaintiff's interrogatories regarding those drawings.[6] *See id.* at PageID.509–10, 533–34; *see also* Pl.'s First Interrog., ECF No. 33-3 at PageID.581 ("Identify, including by date and a description of the drawing, each and every B&P Drawing that is within Defendants' possession, custody, or control . . . ."). In response, Defendants argued that Plaintiff's requests were overbroad and that "[d]iscovery should be limited to the four drawings and one machine identified by B&P in the Complaint." ECF No. 36 at PageID.777. Plaintiff's motion was referred to Magistrate Judge Patricia T. Morris, who held a hearing on September 1, 2021. After oral argument, Judge Morris rejected Defendant's narrow construction of the complaint and granted Plaintiff's motion, stating, "[D]efendants should provide the information beyond just the four drawings alleged in the complaint but rather [sic] any drawings that are assets of B&P . . . ." ECF No. 40 at PageID.1017–18.

Two months later, the parties appeared again in front of Judge Morris, this time on Defendants' motion to compel. ECF No. 42. In short, Defendants sought an order compelling Plaintiff to certify that it had produced all documents relevant to the copyrighted works at issue. *Id.* at PageID.1031. In response, Plaintiff argued that it could not certify that its document production was complete until Defendants completed their document production. ECF No. 47 at PageID.1167–68. Plaintiff explained that, rather than sending copies to Plaintiff, Defendants "h[ad] withheld an unidentified number of documents for 'inspection and copying at Counsel's Birmingham office." *Id.* For the same reasons, Plaintiff also filed a motion to extend the scheduling order. *See* ECF No. 44 at PageID.1114 (arguing that Defendants' discovery production was incomplete and "overdue").

---

[6] The interrogatories at issue are reprinted in full in Section III.A.ii, *infra*.

During the motion hearing, Plaintiff revealed that it had collected the "unidentified number of documents" from Defendants' counsel's office and found some 21,000 B&P drawings within the group. ECF No. 55 at PageID.1265. Plaintiff explained that until it fully analyzed those drawings, its document production would remain incomplete. *Id.* Even so, Plaintiff confirmed that it had produced all documents relevant to the four drawings identified in the complaint. *Id.* at PageID.1272. With this additional context, Judge Morris granted Defendants' motion in part as to the four drawings in the complaint and granted Plaintiff's motion to extend in part (by text-only order), extending the discovery cutoff to December 23, 2021. ECF No. 54.

The peace between the parties was short-lived. Two days after Judge Morris entered her order, Plaintiff filed another motion to compel, styled as a motion to enforce Judge Morris's September order. ECF No. 56. Plaintiff explained that, despite Judge Morris's instruction to provide "information beyond just the four drawings alleged in the complaint," ECF No. 40 at PageID.1017, Defendants had still not answered Plaintiff's interrogatories regarding the B&P drawings in Defendants' possession, *id.* at PageID.1291. Plaintiff also claimed that many of the drawings that Defendants produced were copied in a way that made them "barely legible" and therefore requested an order compelling Defendants to produce the originals. *Id.* at PageID.1292. In response, Defendants claimed that the interrogatories were unduly burdensome because Defendants had already produced the drawings at issue. ECF No. 60 at PageID.1438. They also claimed that Plaintiff's concerns over legibility were disingenuous and part of Plaintiff's secret goal to "increase litigation costs." *See id.* at PageID.1443–44.

On December 15, 2022, Judge Morris held a hearing on Plaintiff's motion and denied it. As a threshold matter, Judge Morris rejected the notion that her September order required Defendants to answer Plaintiff's interrogatories regarding the drawings. ECF No. 64 at

PageID.1524. Rather, she explained that by directing Defendants to provide "information beyond the four drawings," she only meant to direct Defendants to provide other B&P drawings in their possession, not to answer Plaintiff's interrogatories. *Id.* at PageID.1524–25. As for the propriety of the interrogatories, Judge Morris concluded that the information Defendants sought was irrelevant to Plaintiff's claims. *See id.* at PageID.1530–31 ("The defendants have provided the drawings. There are no new claims that have been filed. The complaint has not been amended, and so at this time, . . . I will not enforce the order beyond what it . . . stated in the first place."). For largely the same reason, she rejected Plaintiff's request for an order compelling Defendants to produce native versions of the B&P drawings in their possession, explaining, "I don't think that the copies are going to prevent you from determining whether you can base, you know, an amended complaint on more infringement claims." *Id.* at PageID.1542. She elaborated that Plaintiff might be entitled to "cleaner cop[ies]" if it intended to "amend [its] complaint and file more claims" based on the copies it had received. *Id.* But in her view, Plaintiff's request for cleaner copies was "premature." *Id.*

Plaintiff timely objected to Judge Morris's December order, ECF No. 66, which the parties have fully briefed, ECF Nos. 68; 69.

## II.

A magistrate judge's decision on a nondispositive motion will be upheld unless it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). "The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; legal conclusions are reviewed under the plenary 'contrary to law' standard." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "A finding of fact is clearly

- 7 -

erroneous when, after reviewing the full record, '[the reviewing court is] "left with the definite and firm conviction that a mistake has been committed."'" *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 428 (6th Cir. 2020) (quoting *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2141 (2020) (Roberts, C.J., concurring in the judgment). Conversely, "an order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. Winsper*, No. 3:08-CV-631-H, 2013 WL 5673617, at *1 (W.D. Ky. Oct. 17, 2013)).

Moreover, district courts enjoy "broad discretion over discovery matters, and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion." *State Farm Mut. Auto. Ins. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017). For this reason, a magistrate judge's decision in a discovery dispute will be overruled "only if the district court finds an abuse of discretion." *Id.* (citing 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3069 (3d ed. 2021)). A magistrate judge abuses her discretion "when [she] relies on clearly erroneous findings of fact, when [she] improperly applies the law, or uses an erroneous legal standard." *Bisig*, 940 F.3d at 218 (quoting *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998)). In other words, a district court may overrule a magistrate judge's decision in a discovery dispute only if the district court is left with "a definite and firm conviction that the [magistrate judge] committed a clear error of judgment." *Id.* (quoting *Stough*, 138 F.3d at 614).

### III.

Plaintiff states two objections to Judge Morris's December order. Each objection is addressed in turn below.

**A.**

Plaintiff first objects that Judge Morris erred in finding that Plaintiff's interrogatories seek irrelevant information. *See* ECF No. 66 at PageID.1559.

The scope of discovery is governed by Federal Rule of Civil Procedure 26, which provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

In general, "relevance is an 'extremely low bar.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, No. CV 16-10936, 2021 WL 5049154, at *3 (E.D. Mich. Oct. 31, 2021) (quoting *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014)); *see also* 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2008 (3d ed. 2021) ("Most courts which have addressed the issue find that the amendments to Rule 26 still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad." (quoting *EEOC v. Caesars Ent., Inc.*, 237 F.R.D. 428, 431 (D. Nev. 2006)).

**i.**

Plaintiff's Complaint identifies four drawings that Defendants allegedly scanned, manipulated, and otherwise misused to create new drawings. *See* ECF No. 1 at PageID.23–45. Yet reminiscent of the trade-secret case, the complaint is not limited to four drawings. Indeed, it

- 9 -

contains three paragraphs outlining a much broader scheme of infringement involving an unknown

number of drawings:

> 147.    Upon information and belief, Defendants maintain physical and/or digital copies of other original B&P works in addition to those listed in Exhibit A, to hold for an indefinite duration for the purposes of creating unauthorized reproductions or derivative works and distributing those works to potential customers and vendors.

> 148.    Upon information and belief, Defendants have created and maintained physical and/or digital copies of other original B&P works with altered and falsified CMI in addition to those listed in Exhibit A, to hold for an indefinite duration for the purposes of distributing those works to potential customers and vendors

> 149.    Upon information and belief, Defendants have removed B&P's "Baker Perkins" mark and the B&P Globe Logo and replaced it with Prescott's mark on additional B&P machinery besides the Vertical Mixer in McAlester to trade off the goodwill and reputation of B&P.

*Id.* at PageID.48.

On these allegations, any B&P drawing in Defendants' possession would be relevant to Plaintiff's claims because it would tend to prove that Defendants are misusing Plaintiff's copyrighted works. The same reasoning applies to the information that Plaintiff seeks in its interrogatories. Simply put, if the drawings themselves are relevant to Plaintiff's claims, then information like where Defendants obtained the drawings and whether Defendants scanned them must also be relevant.[7] *See* Pl.'s Am. First Interrogatories, ECF No. 56-3 at PageID.1328–29.

---

[7] This Court recently made a similar observation in the trade-secret case. *See B&P Littleford, LLC v. Prescott Mach.*, No. 1:18-CV-11425, 2021 WL 6133911, at *6 (E.D. Mich. Dec. 29, 2021) ("Whether Defendants have other B&P drawings and how Defendants obtained them are both questions that lay at the heart of this case. Therefore, B&P should at least have an *opportunity* to learn the answers."). Although the underlying claims and facts in the two cases vary in many respects, the Sixth Circuit's direction in the trade-secret case is persuasive here. *See B&P Littleford, LLC v. Prescott Mach.*, No. 20-1449, 2021 WL 3732313, at *8 (6th Cir. Aug. 24, 2021) (holding that "summary judgment was premature and further factual development is required").

In denying Plaintiff's motion, Judge Morris seemingly assumed that Plaintiff needs to amend its complaint to specify which of the 21,000 drawings were wrongfully copied before it can seek additional information. *See* ECF No. 64 at PageID.1530–31. Although many complaints, like Plaintiff's, could benefit from greater specificity, the undersigned is unaware of any authority requiring plaintiffs to refine their factual allegations before seeking plainly relevant information. On the contrary, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to Rule 26's proportionality requirement and other limitations. *See* FED. R. CIV. P. 26(b)(1). In other words, because Plaintiff alleges a scheme to manipulate and misuse its copyrighted drawings, the information it seeks in its interrogatories is relevant, regardless of whether the complaint specifically identifies every drawing. *See* FED. R. CIV. P. 26(b)(2). Defendants' belief that those allegations are false is no reason to limit discovery.

Therefore, to the extent Judge Morris denied Plaintiff's motion based on relevance, her decision was clearly erroneous. *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019).

### ii.

Defendants do not deny that Plaintiff's interrogatories seek relevant information. Instead, they argue that Plaintiff's interrogatories are overbroad and unduly burdensome because Defendants have already produced the drawings at issue.[8] ECF No. 68 at PageID.1583–86.

---

[8] Defendants also argue that Plaintiff's objection is untimely; they reason that Plaintiff should have objected to Judge Morris's September order, because it "sequenced" discovery, requiring Defendants to produce only the drawings. *See* ECF No. 68 at PageID.1581–82. This argument is without merit. District courts may dictate the sequence of discovery. *See* FED. R. CIV. P. 26(d)(3). But neither the transcript of the September hearing nor Judge Morris's subsequent order reveal any intent to sequence discovery. *See generally* ECF Nos. 40; 41. Indeed, Judge Morris "granted" Plaintiff's motion in relevant part, ECF No. 41 at PageID.1029, and directed Defendants to "provide information beyond just the four drawings," ECF No. 40 at PageID.1017. Plaintiff's

Defendants' argument is best considered in light of Rule 26's requirement that discovery requests be "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In deciding whether a discovery request is proportional, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Plaintiff's motion to compel concerns six interrogatories:

Amended Interrogatory No. 3: Identify, including by date and a description of the drawing, each and every B&P Drawing . . . that is within Defendants' possession, custody, or control, or that has been within Defendants' possession, custody, or control at any time since April 2008.

Amended Interrogatory No. 4: Identify, including by name, date, and a description of the drawings, every source from which Defendants obtained every drawing identified in response to Interrogatory No. 3, including each person and each physical location from which Defendants obtained any drawings.

Amended Interrogatory No. 5: Identify every physical or digital location of every B&P Drawing . . . in Defendants' possession, custody, or control, including any paper copy, microfilm copy, or digital file.

Amended Interrogatory No. 8: Identify every instance (including by date, a description of the drawing, any persons involved, and a description of the process of scanning, creating, or copying), in which you scanned or created a copy (physical or electronic) of any drawing identified in response to Interrogatory No. 3. Your response should include a description of any and all physical or digital locations where such scans or copies are stored. This Interrogatory explicitly requests and includes scans or copies of any drawing identified in response to Interrogatory No. 3 to which subsequent changes, edits, or modifications were made.

Amended interrogatory No. 9: Identify every B&P Drawing . . . from which you have ever removed, altered, or modified any information from the drawing's title block. This Interrogatory explicitly seeks the identity of copies or derivatives (physical or digital) of B&P Drawings . . . from which you have ever removed, altered, or modified any information from the drawing's title block.

---

apparent misinterpretation of Judge Morris's direction does not make its current objection untimely.

> Amended Interrogatory No. 10: Identify, for every B&P Drawing . . . , including by date and a description of the drawing, every instance in which you added any information relating to Prescott to the drawing's title block. This Interrogatory explicitly seeks the identity of copies or derivatives (physical or digital) of any B&P Drawing . . . in which you added any information relating to Prescott to the drawing's title block.

ECF No. 56-3 at PageID.1328–30 (emphasis omitted).

Defendants note that answering these interrogatories would require them to create a table with the relevant information for each of the 21,000 drawings produced. *See* ECF No. 68 at PageID.1584–85. In addition to the time and expense that such a task would impose, Defendants give two reasons for why the burden of creating such a table would be undue: (1) they already produced the drawings, so Plaintiff could make the same table using its own resources; and (2) only a fraction of the 21,000 drawings could have been misused because Prescott has created only 900 drawings, all of which were produced in discovery. ECF No. 68 at PageID.1583–86.

Defendants' first reason has some merit with respect to the information that is reasonably apparent from the face of the drawings. Indeed, it would seem unfair to require Defendants to describe each of the 21,000 drawings, as requested in the interrogatories, as Plaintiff can also describe them. Yet for other information, like from where the drawing was acquired and whether it was scanned, Defendants' reasoning is inapposite. Plaintiff has no way of discovering such information independently, and such information is clearly relevant. *See supra* Section III.A.i.

Defendants' second reason assumes that Plaintiff may only seek relief based on the 900 Prescott drawings, most of which Plaintiff asserts were copied from B&P drawings. ECF No. 69 at PageID.1601. But at this stage in the case, many significant questions remain, including the relationship between the B&P drawings and the Prescott drawings, how the Prescott drawings were created, and whether Defendants manipulated the drawings' CMI. With so many questions remaining, it would be unreasonable to sharply limit Plaintiff's discovery under the assumption

that only 900 drawings are significant. For the same reason, this Court rejects Defendants' argument that the interrogatories are disproportional because Plaintiff only has 72 copyrights registered with the Copyright Office. *See* ECF No. 68 at PageID.1585–86.

Yet in considering Rule 26's proportionality factors, *see* FED. R. CIV. P. 26(b)(1), some limitations are in order. First, in producing a table of information responsive to Plaintiff's interrogatories, Defendants need not describe the drawings or provide any other information that is reasonably apparent from the face of the drawings, unless necessary to identify them (e.g., providing names of the drawings). Second, Defendants may group the drawings in a logical manner and provide the relevant information by group. The B&P drawings are technical in nature and depict machine components; presumably, then, at least some of the drawings are logically related and may be grouped together by machine or component. Assuming related drawings were similarly acquired, treated, and stored, grouping the drawings should reduce the burden and expense on Defendants without inhibiting discovery. Indeed, Plaintiff's counsel suggested this solution to Defendants before filing Plaintiff's second motion to compel. *See* ECF No. 56-7 at PageID.1414 ("B&P explained that [providing individual answers for each of the drawings] is not necessary, and offered to permit Defendants to answer B&P's [interrogatories] by making general identifications . . . by batches/groups of documents . . . .").

**iii**.

Accordingly, Judge Morris's order will be overruled to the extent it denies Plaintiff's motion to compel answers to its interrogatories, subject to the limitations described in Section III.A.ii, *supra*.

**B.**

Plaintiff next objects that Judge Morris erred in denying Plaintiff's request to compel Defendants to produce "native and legible copies" of the drawings. *See* ECF No. 66 at PageID.1562. Plaintiff alleges that many of the copies Defendants produced are illegible or distorted because they were printed in "low quality" on 8x11 inch paper instead of the 11x17 inch paper Plaintiff alleges is typically used. *Id.* at PageID.1559; ECF No. 69 at PageID.1601. Simply put, Plaintiff wants to see the native form of the drawings Defendants have, whether in electronic or hardcopy format.

**i.**

Plaintiff's request for production of native copies is governed by Rule 34, which provides, in relevant part:

> (a) **In General.** A party may serve on any other party a request within the scope of Rule 26(b):
>> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>>> (A) any designated documents or electronically stored information-- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .

FED. R. CIV. P. 34(a).

In responding to a request for production, a party "may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." FED. R. CIV. P. 34(b)(2)(B). This copying provision was added in 2015 to "reflect the common practice of producing copies of documents or electronically stored information rather than simply permitting inspection." *See* FED. R. CIV. P. 34(b)(2)(B) advisory committee's note to 2015 amendment. Still,

- 15 -

a district court may compel a party to produce physical documents for inspection. *See* FED. R. CIV. P. 37(a)(3)(B).

Based on the hearing transcript, Judge Morris declined Plaintiff's request to compel Defendants to produce native versions of the drawings because she believed that Plaintiff's request was outside the scope of discovery and disproportional to the needs of the case. *See* ECF No. 64 at PageID.1542 ("I think that's getting out of proportion to . . . the case needs. . . . If you think the drawings could potentially, you know, lead you to amend your complaint . . . , then at that point maybe you need a cleaner copy of things . . . .").

To the extent Judge Morris's decision was based on relevancy, it must be reversed for the reasons discussed in Section II.A.i, *supra*. To the extent her decision was based on proportionality, it requires more careful consideration.

As a threshold matter, Judge Morris's concern for the burden Plaintiff's request would impose on Defendants, who had already copied and produced over 21,000 drawings in discovery, is well grounded. Still, for proportionality purposes, Rule 26 requires a district court to balance the parties' respective interests and burdens in any given discovery request. *See* FED. R. CIV. P. 26(b)(1). Each of the Rule 26 proportionality factors are considered in turn below.

**ii.**

With respect to the first factor—the importance of the issues at stake in the action—both sides have a significant stake in this action, both in terms of the significant resources invested and the likely business ramifications. Indeed, by all appearances, this is potentially existential litigation for B&P and Prescott. The stakes are just as high for the second factor—the amount in controversy. Under federal law, a copyright owner may obtain either (1) actual damages, or (2) statutory damages as high as $30,000 for *each infringement*. *See* 17 U.S.C. § 504. The DMCA and the

Lanham Act offer similarly substantial damages. *See id.* § 1203(c) (allowing plaintiff prevailing under DMCA to recover either (1) actual damages, or (2) statutory damages as high as $25,000 for each violation); 15 U.S.C. § 1117(a) (allowing plaintiff prevailing under Lanham Act to recover actual damages and costs).

The remaining four factors deal more generally with the parties' relative burdens and interests. *See* FED. R. CIV. P. 26(b)(1) (directing district court to consider "the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). Of those factors, the weightiest here is the "importance of the discovery in resolving the issues." *Id.* To prevail on any of its copyright or DMCA claims, Plaintiff must be able to identify and analyze discrete parts of the drawings in Defendants' possession, including their technical content and CMI. Without legible copies, that task would be near impossible. Accordingly, the question becomes how discovery should be structured to provide Plaintiff with legible copies without unduly burdening the parties. *See id.*

Defendants suggest that Plaintiff could review the copies and identify the illegible ones, enabling Defendants to search their own records for a more legible copy. Although Defendants' approach would ease their initial burden, it is unclear why it would prove more convenient overall. Indeed, under Defendant's approach, Plaintiff would be forced to sift through over 21,000 drawings, identify the illegible ones, and then notify Defendants, who would then have to search their own records. On balance, it would seem easier for everyone if Defendants simply produced what they have in native form, whether electronic or hardcopy, and allowed Plaintiff to inspect the drawings at its own expense.

In summary, the undersigned finds that Plaintiff's request to compel the production of Defendants' native versions of the drawings is "proportional to the needs of the case," and Defendant will therefore be directed to produce those versions.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Objections to Magistrate Judge Morris's Order, ECF No. 66, are **SUSTAINED AND OVERRULED IN PART**.

Further, it is **ORDERED** that Judge Morris's Order Denying Plaintiff's Motion to Compel, ECF No. 63, is **AFFIRMED AND REVERSED IN PART**.

Further, it is **ORDERED** pursuant to Federal Rule of Civil Procedure 37 that:

1. Defendants are **DIRECTED** to respond to Plaintiff's Amended First Interrogatories Nos. 3, 4, 5, 8, 9, 10, **on or before April 5, 2022**. In responding to Plaintiff's interrogatories, Defendants may group the drawings in a logical manner and, with respect to any drawing, need not provide information that is reasonably apparent from the face of the drawing, unless necessary to identify the drawing.

2. Defendants are **DIRECTED** to produce all documents responsive to Plaintiff's requests for production for inspection at a place designated by Defendants **no later than April 5, 2022**. Defendants must produce all drawings in their native form, as kept in the ordinary course of business, whether kept in electronic form or hardcopy.

It is **SO ORDERED.**

Dated: March 3, 2022                         s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge